438 So.2d 1230 (1983)
STATE of Louisiana, Appellee,
v.
Alvin W. GINTZ, Appellant.
No. CR83-102.
Court of Appeal of Louisiana, Third Circuit.
October 12, 1983.
*1231 Jerry B. Daye, Ferriday, Louis Vogt, Jonesville, for appellant.
John F. Johnson, Asst. Dist. Atty., Harrisonburg, for appellee.
Before DOMENGEAUX, FORET and YELVERTON, JJ.
FORET, Judge.
Alvin Wayne Gintz (defendant) was indicted for the second degree murder of James Doyle, in violation of LSA-R.S. 14:30.1. He entered a plea of not guilty and not guilty by reason of insanity. Subsequently, defendant was tried by a jury which found him guilty as charged. Pursuant to the penal provision of LSA-R.S. 14:30.1, the trial court sentenced defendant to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. Defendant appeals from his conviction.
ASSIGNMENTS OF ERROR
1. The trial court violated defendant's right to a fair trial by denying his motion for a continuance, which was necessary for him to adequately prepare his defense.
2. The trial court violated defendant's right to a fair and impartial jury by refusing to accept defendant's challenge for cause of a certain juror on the ground that she was biased against him.
3 & 6. The trial court erred in denying defendant's motions for a mistrial *1232 made when certain witnesses, in their testimony, alluded to other crimes alleged to have been committed by defendant.
4 & 5. The trial court erred in refusing to give certain special jury instructions as requested by defendant.

FACTS
The evidence indicates that defendant accompanied his cousin, Calvin M. Gintz, Jr., and Doyle on a deer hunting trip on January 1, 1982. At approximately 3:00 A.M., the hunting party left Pineville for the J.W. Ford Camp located near Aimwell, in Catahoula Parish. Upon arriving at the camp, they were met by Ford and his eight-year-old nephew. Everyone then proceeded into the woods surrounding the camp to hunt. Later that morning, Ford and his nephew returned to the camp and found defendant there. A short while later, Calvin and Doyle appeared at the camp.
Around noon, Ford and his nephew left for home. Doyle began cleaning the camp, but insisted that Calvin return to the woods to attempt to kill a deer that had been spotted in the area earlier that week and Calvin left to do so. He remained in the woods for a few hours and then returned to the camp. When he got within thirty feet of it, he saw Doyle lying on his back in the doorway. It appeared that he had either been stabbed or shot. Defendant was nowhere to be found.
After discovering Doyle's body, Calvin attempted to make his way through the woods to get help, and eventually stopped a truck that was being driven through the woods. The driver of that truck alerted other hunters in the area as to what had happened, and then brought Calvin to Ford's home. Meanwhile, someone else notified the Catahoula Parish Sheriff's Department that a person had been hurt or shot in the area.
Paul Blunschi, a criminal investigator for the Catahoula Parish Sheriff's Department, and a deputy, were the first persons to arrive at the camp and were met there by defendant. Blunschi told defendant that there was a report that there had been some trouble in the area. However, defendant stated that there was, "... no, no trouble up here".
Blunschi and the deputy then noticed a trail on the ground indicating that something had been dragged over it. The deputy followed the trail and came running back, telling Blunschi to handcuff defendant as he had found Doyle's body under a pile of leaves. Blunschi placed defendant under arrest and read him his rights. Under questioning, defendant admitted that he had stabbed Doyle. A knife found on defendant was later determined to be the murder weapon.

ASSIGNMENT OF ERROR NUMBER 1
Defendant contends that the trial court committed reversible error in denying a motion for a continuance filed by him. The motion was based on two grounds. First, defendant alleged that he was unable to meet with counsel for several weeks prior to trial because he was confined at the Feliciana Forensic Facility (F.F.F.). The trial court denied the motion on this ground, noting that defendant had been returned to Harrisonburg on October 12, 1982 (six days before trial began). The trial court further noted that defendant's counsel had been appointed to represent him some months before he was sent to F.F.F., and that counsel had not been denied access to him while he was confined there[1].
The second ground on which defendant relied was that he had not received certain medical reports of tests that were performed on him. He argued that these reports contained information necessary for him to prepare his defense on his plea of insanity. Defense counsel testified that both he and the District Attorney's office had attempted to obtain these reports, but *1233 were unable to do so. However, there had been no attempt made to interview the doctors personally at their offices, or to obtain the reports from them. Upon being informed by the Assistant District Attorney that the reports were available and that a deputy could be sent to pick them up, the trial court requested that this be done. It then denied defendant's motion on this ground. The reports were furnished to defendant's counsel on the second day of trial.
The granting or refusal of a motion for a continuance rests within the sound discretion of the trial court; its ruling will not be disturbed on appeal absent a clear abuse of discretion and a showing of specific prejudice caused by the denial. State v. Jordan, 420 So.2d 420 (La.1982); State v. Simpson, 403 So.2d 1214 (La.1981); State v. Haarala, 398 So.2d 1093 (La.1981). See also LSA-C.Cr.P. Article 712.
The record supports the trial court's conclusion that defendant had ample time to meet with his appointed counsel prior to trial. Thus, there was no clear abuse of discretion by the trial court in denying defendant's motion for a continuance based on this ground.
As for the second ground set forth by defendant in his motion, the record indicates that the medical tests were performed on defendant upon the recommendation of Dr. Edward W. Camp, III. Dr. Camp's recommendation was contained in a report he submitted to the trial court as a member of the Sanity Commission appointed to examine defendant. Dr. Camp declined to make a final diagnosis regarding any mental illness defendant might be suffering from until these tests were performed. However, at trial, Dr. Camp opined that defendant knew the difference between right and wrong at the time he committed the offense with which he was charged.
A review of the record makes it clear that Dr. Camp wanted the tests performed so that he could accurately diagnose defendant's mental illness. These tests were of no consequence with respect to his opinion regarding defendant's sanity. Dr. Camp was willing to give his opinion on this issue without reviewing the results of the tests.
We find no clear abuse of discretion by the trial court in denying defendant's motion for a continuance based on this ground.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER 2
Defendant contends that the trial court erred in denying his challenge for cause of Mrs. Lorraine Weeks, a member of the jury that convicted him. Defendant argues that Mrs. Weeks was a biased and unfair juror, thus violating his right to a fair and impartial jury. Defendant's argument is based on the following three factors:
1. Mrs. Weeks had discussed the case with some of the witnesses that would testify at his trial;
2. Mrs. Weeks had formed an opinion regarding his guilt or innocence; and
3. Mrs. Weeks was acquainted with the assistant district attorney that would prosecute him.
LSA-C.Cr.P. Article 797 provides:
"Art. 797. Challenge for cause
The state or the defendant may challenge a juror for cause on the ground that:
(1) The juror lacks a qualification required by law;
(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;

(3) The relationship, whether by blood, marriage, employment, friendship, or enmity between the juror and the defendant, the person injured by the offense, the district attorney, or defense counsel, is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict;
(4) The juror will not accept the law as given to him by the court; or

*1234 (5) The juror served on the grand jury that found the indictment, or on a petit jury that once tried the defendant for the same or any other offense." (Emphasis ours.)
A trial court is vested with broad discretion in ruling on a challenge for cause and that ruling will not be disturbed on appeal absent a showing of an abuse of that discretion. State v. Sugar, 408 So.2d 1329 (La.1982); State v. Bates, 397 So.2d 1331 (La.1981); State v. Lewis, 391 So.2d 1156 (La.1980); State v. Drew, 360 So.2d 500 (La.1978). A review of the entire voir dire is essential to determine if the trial court's discretion has been arbitrary or unreasonable and resulted in prejudice to the accused. State v. Bates, supra; State v. McIntyre, 381 So.2d 408 (La.1980); State v. Dickinson, 370 So.2d 557 (La.1979).
The entire transcript of the voir dire examination of Mrs. Weeks is contained in the record before us.
In State v. Hodgeson, 305 So.2d 421 (La. 1974), defendant challenged for cause a prospective juror on the basis that he had "reached a strong conclusion" from information he had received, and that he had discussed the case with the Marshal of Sorrento (a longtime friend and co-worker)[2]. However, in response to questions throughout voir dire, the prospective juror stated that he could accept and apply the presumption of defendant's innocence and, laying aside his opinion, would consider only the testimony given at trial in determining the question of defendant's guilt or innocence.
After noting the above, Hodgeson stated, at page 424, that:
"In reviewing the entire transcript of voir dire, we do not find any abuse in the trial court's discretion in its determination that the prospective juror was capable of putting aside his own opinion and rendering an impartial decision based upon the evidence adduced at trial. State v. Richmond, 284 So.2d 317 (La. 1973) and cases cited therein."
Similarly, after reviewing the entire transcript of the voir dire examination of Mrs. Weeks, we find no abuse of discretion by the trial court in making its determination that she was capable of putting aside her own opinion and rendering an impartial decision based on the evidence adduced at trial. Mrs. Weeks was repeatedly questioned as to whether she could do this and she stated that she could each time[3].
Defendant's final argument is that his challenge for cause of Mrs. Weeks should have been sustained because she was acquainted with the assistant district attorney who was to prosecute him. A similar argument was made in State v. Winn, 412 So.2d 1337 (La.1982).
In Winn, the prospective juror objected to by the defendant had a recent and lengthy employment with the Caddo Parish Clerk of Court's Office. Her job duties were related to the criminal justice system in that she prepared all of the criminal appeals from Caddo Parish for appellate review. By virtue of her employment, she knew the assistant district attorney who was to prosecute defendant and also stated that she had handled many appeals in cases that were prosecuted by him.
*1235 Winn found no abuse of discretion by the trial court in denying defendant's challenge for cause of this prospective juror. Winn noted that she had testified on voir dire that her acquaintance with the assistant district attorney on a professional level would in no way affect her deliberation on the facts in the case.
In the case before us, the following exchange took place between Mrs. Weeks and the assistant district attorney:
"Mr. Johnson: The fact is you are from Harrisonburg, been here most of your life and so am I and even though we don't visit in each other's homes now, we used to a few years back and .. I know my grandmother did, but is that going to cause you any problems?
A. No sir."
There is no merit to this assignment of error.

ASSIGNMENTS OF ERROR NUMBERS 3 & 6
Defendant contends that the trial court erred in denying his motions for a mistrial made when certain witnesses allegedly referred to inadmissible "other crimes evidence" in their testimony. Defendant's first motion for a mistrial was made after Deputy Pete Tolar, a criminal investigator for the Catahoula Parish Sheriff's Department, testified. Deputy Tolar had been testifying as to what the investigation had consisted of on the day after the offense occurred. He was then questioned as follows:
"Q. Okay. What did your investigation consist of after that day, do you...
A. Mine?
Q. Yeah.
A. Mostly taking statements. I went to Alexandria, took a statement. Went...
Q. Can we .. can we sum it up as took statements from witnesses who were there and knew pieces about what occurred?
A. And relatives ... you know .. stuff like that.
Q. Okay.
A. I went to Sulphur and picked up copies of arrest reports.
Mr. Daye: Your Honor, I am going to make an objection to that.
Judge: Alright. The objection is sustained at this time, Mr. Johnson .. without getting further into your foundation as to what you are trying to get at, but...
Mr. Johnson: I don't have any further questions.
Judge: You just ... you have no further questions?
Mr. Johnson: No further questions.
Judge: Alright. Mr. Daye."
After completing his cross-examination of Deputy Tolar, defendant requested that the jury be removed from the courtroom. He then moved for a mistrial on the ground that Deputy Tolar's testimony, to the effect that he had gone to Sulphur to pick up copies of arrest reports, was a reference to inadmissible other crimes evidence.
The trial court denied defendant's motion for a mistrial, stating a number of reasons for doing so. We agree with the trial court's ruling on the basis that the testimony objected to by defendant fails to constitute inadmissible other crimes evidence. Nowhere in his testimony did Deputy Tolar state that he was going to Sulphur to pick up defendant's arrest reports, and we do not believe that this can be readily inferred from his testimony.
Defendant's second motion for a mistrial was made while Terry Stevens was testifying. Stevens was incarcerated in the Catahoula Parish Jail with defendant. He was asked by the prosecution if defendant had ever offered him an explanation about the offense with which he was charged. Stevens replied that he did, stating that:
"Well, he said it was ... that was his worst offense he had ever had and ... he said that him and the man ...".
Defendant immediately objected to this testimony and requested that the jury be removed once again from the courtroom. He then moved for a mistrial on the ground that Stevens' testimony constituted a reference *1236 to inadmissible other crimes evidence. The trial court first noted that the prosecution was coming dangerously close to adducing that type of evidence. However, it denied defendant's motion, stating that Stevens' testimony contained no direct or indirect reference to "... another crime committed or alleged to have been committed by the Defendant as to which evidence is not admissible".
We agree with the trial court's ruling. The record indicates that defendant, in presenting his case, recalled Deputy Blunschi as a hostile witness. Defense counsel then began to question Deputy Blunschi about a statement made by defendant on January 2, 1982, which was recorded on tape. After answering these questions, Deputy Blunschi was requested by defense counsel to play the tape for the jury, but was unable to do so as the recording wasn't loud enough for them to hear it.
He was then allowed to read a transcript of the recording into the record. The transcript reveals that Deputy Blunschi asked defendant the following question:
"Okay. You told me .. you told one of the trustees last night that this was the worst crime that you had ever committed. Is that right? Is that what you told one of the trustees last night? That this was the worst crime you had ever committed?"
Defendant answered:
"I did, but I didn't mean it."
Another statement made by defendant on January 5, 1982, was videotaped. Defense counsel also introduced this statement in evidence. While we do not have the actual videotape, there is a transcript of the statement in the record. In that transcript, the following exchange takes place:
"Q. Is this about the worse crime you've ever committed?
A. Yes sir, it was.
Q. This is the worse one you've ever committed isn't it?
A. That's right."
(Deputy Blunschi is again questioning defendant.)
As can be seen, defendant himself introduced in evidence information identical to that given by Stevens in his testimony. Under these circumstances, it is our opinion that defendant waived his right to object to Stevens' testimony. There is no merit to these assignments of error.

ASSIGNMENTS OF ERROR NUMBERS 4 & 5
Defendant neither briefed nor argued assignments of error numbers 4 and 5. Hence, we consider them to have been abandoned. State v. Perry, 420 So.2d 139 (La.1982); State v. Blanton, 325 So.2d 586 (La.1976); State v. Carlisle, 315 So.2d 675 (La.1975). In any event, they are without merit.
A review of the instructions given by the trial court to the jury indicates that the substance of both of defendant's requested special jury instructions was included therein.

DECREE
For the reasons assigned, defendant's conviction is affirmed.
AFFIRMED.
NOTES
[1] The record reflects the fact that defense counsel was appointed to represent defendant through the Indigent Defender Board.
[2] From a reading of Hodgeson, it is impossible to tell whether the Marshal of Sorrento was to testify at defendant's trial. However, in State v. Hackett, 166 La. 261, 117 So. 141 (1928), the Louisiana Supreme Court upheld a trial court's ruling denying defendant's challenges for cause of three prospective jurors who had discussed the case with one of the prosecution's witnesses (the victim of the robbery for which defendants were being tried). Hackett noted that two of the prospective jurors had formed no opinion regarding defendant's guilt, and the third had stated that, if accepted as a juror, he could disregard what he had heard concerning the case and would try it upon the evidence to be adduced at trial.
[3] As in Bates, we conclude that a challenge for cause is not warranted where a juror has volunteered an opinion seemingly prejudicial to the defendant but subsequently, upon further inquiry or instruction by the court, has demonstrated the ability and willingness to decide the case impartially according to the law and evidence.