505 So.2d 237 (1987)
STATE of Louisiana, Plaintiff-Appellee,
v.
Barry Ray GIBSON, Defendant-Appellant.
No. CR 86-897.
Court of Appeal of Louisiana, Third Circuit.
April 8, 1987.
Writ Denied June 12, 1987.
*239 Julie E. Cullen, Stephen James Ledet, Opelouas, for defendant-appellant.
Morgan Goudeau, III, Dist. Atty., Jack Burson, Asst. Dist. Atty., Opelousas, for plaintiff-appellee.
Before LABORDE and YELVERTON, JJ., and CULPEPPER, J. Pro Tem.[*]
LABORDE, Judge.
Defendant, Barry Ray Gibson, was found guilty by a jury of twelve of first degree murder, a violation of LSA-R.S. 14:30. Defendant was sentenced to life imprisonment without benefit of probation, parole or suspension of sentence. He appeals raising six (6) assignments of error.

FACTS
On October 19, 1984 Wanda Gail Guidry was at A.J.'s Bar in Opelousas. At about 2:00 a.m., closing time, she procured a ride to the "Plaza" with Vaughn Godeau. There was some problem with Mr. Godeau providing a ride home for Ms. Guidry; so she got a ride with defendant. Defendant did not drive her home as Ms. Godeau wanted to go to a friend's home.
Defendant, who had been drinking, had a rifle in his car and a pistol on the front seat. Ms. Guidry and defendant drove to "the hill," a black residential area in Opelousas, and at about 3:20 a.m. picked up a black man. The black man, later identified as Warren Myers,[1] was walking to Port Barre when he was told to get in the car by defendant.
An altercation arose during the trip. Defendant stopped on the shoulder of Hwy. 190, pulled Mr. Myers from the car, and beat him with a gun. Defendant demanded money from the victim who had no money to give. During the beating, defendant's *240 gun broke. The victim was forced back into the car. Defendant drove to a deserted road. Defendant again forced the victim from the car. He commanded the victim to lay face down on the ground. Defendant then took aim and fired two shots into the head of Mr. Myers.
After the execution, defendant threatened to kill Gail Guidry and her children if she mentioned the murder to anyone. When confronted by law officers, Ms. Guidry admitted her knowledge and assisted with the investigation.
Defendant's wife gave defendant's gun to the police, a .22 caliber gun, the same caliber gun as that used to kill Mr. Myers. The gun is also damagedthe cylinder will not rotate. The test shells fired from the gun were similar in type and class characteristic to those fragments removed from the body of the victim.

ASSIGNMENT OF ERROR NO. 1
Defendant argues that the trial court erred in denying the defense's challenge for cause of juror Willie Stoute. Defendant contends that Mr. Stoute should have been excused under La.C.Cr.P. art. 797(2) and (3) because he was a social acquaintance and had previously spoken to the victim, and because he is a good friend of the victim's family. Defendant also contends that Mr. Stoute should have been excluded for cause because he is a retired police officer.
A defendant may only complain about a trial court's denial of his challenge for cause if he has exhausted all his peremptory challenges. State v. Smith, 430 So.2d 31 (La.1983); State v. Heard, 408 So.2d 1247 (La.1982). In this case, defendant exhausted all of his peremptory challenges and can therefore raise the issue of an erroneous denial of his challenge for cause. The trial judge has wide discretion in ruling on a challenge for cause, and his ruling will not be disturbed on appeal absent a showing of abuse of discretion. State v. Gintz, 438 So.2d 1230 (La.App. 3d Cir.1983).
A charge of bias may be removed if a witness is rehabilitated. State v. Williams, 447 So.2d 495 (La.App. 3d Cir.), writ denied, 450 So.2d 969 (La.1984). A prospective juror can be rehabilitated if the court is satisfied that the juror can render an impartial verdict according to the evidence and instructions given by the court. State v. Broadway, 440 So.2d 828 (La.App. 2d Cir.1983).
Mr. Stoute stated that he would have no problem being on the jury, that he could put the fact he knew the victim and his family completely out of his mind and decide the case solely on the evidence he would hear. Stoute stated that he had not visited at the victim's home, nor had the victim visited at his home. Mr. Stoute averred that he had not as yet determined who killed Warren Myers. Stoute agreed to find defendant not guilty if the state failed to present evidence of guilt beyond a reasonable doubt. Mr. Stoute stated that he could be fair and that he would weigh all the evidence given in court.
The mere statement by a juror that he could be fair and impartial is not binding on the trial court. State v. Shelton, 377 So.2d 96 (La.1979). The trial judge witnessed the prospective jurors first hand, and he was in the best position to determine their veracity. The trial judge did not abuse his wide discretion in finding that this juror was impartial, and that his relationship with the victim would not influence him in arriving at a fair verdict.
Defendant also contends that this juror's link to law enforcement would impair his ability to be fair. Mr. Stoute had been an auxiliary policeman and knew some of the officers investigating the case.
In State v. Valentine, 464 So.2d 1091 (La.App. 1st Cir.), writ denied, 468 So.2d 572 (La.1985), the appellate court found that the trial court had not abused its discretion in accepting as a fair and impartial juror a woman who worked as an officer for the Department of Corrections. The juror had indicated that she would have no trouble being objective in determining guilt or innocence, or weighing the *241 credibility of police officers who testified. A relationship to law enforcement is not alone grounds for a challenge for cause. State v. Smith, 430 So.2d 31 (La.1983); State v. Heard, 408 So.2d 1247 (La. 1982).
Mr. Stoute stated he could evaluate the police testimony just as he would evaluate anyone else's. Close scrutiny is required before a prospective juror who has been in law enforcement is allowed on a jury. State v. Lewis, 391 So.2d 1156 (La.1980). Here, Mr. Stoute's connection with law enforcement was considered and he withstood this scrutiny.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 2
Defendant contends that the trial court erred in accepting the state's challenge for cause of Ms. Mildred Cortez. The defense argues that Ms. Cortez was improperly exluded. She admitted that she knew defendant's grandfather, but that she could be fair and impartial and that she could consider the death penalty in some situations.
The threshold question is whether the State used all of its peremptory exceptions. If the State has not used all its peremptory exceptions, the defense cannot complain of the trial court's granting of the State's challenge for cause. La.C.Cr.P. art. 800(B). Here, the State had exhausted its peremptory challenges.
The trial judge has wide discretion in ruling on a challenge for cause, and his ruling will not be disturbed absent a showing of abuse of discretion. Gintz, 438 So.2d at 1234.
In State v. Forman, 466 So.2d 747 (La. App. 4th Cir.1985), a juror stated that he and the defendant were friends and he saw the defendant often. The "relationship" in Forman was that the defendant "went out" with a friend of the juror's girlfriend's sister. The court considered this remote relationship, with the fact that the juror did not want to sit on the case, to excuse this juror for cause.
This case involves as tenuous a relationship as Forman's. A remote relationship may exist in our case, but the prospective juror, Ms. Cortez, expressed doubt as to her ability to be impartial. A charge of bias may be removed if a witness is rehabilitated. Williams, 447 So.2d at 503. The decision on whether a prospective juror has been rehabilitated rests with the court. Broadway, 440 So.2d at 832.
The defense attempted to rehabilitate Ms. Cortez and did receive some statements to the effect that she could be fair and impartial. But, in response to the prosecution's last question:
Q. "I want to give you a simple hypothet, that you've got a situation here where you've got all of the bad, aggravating circumstances that the law requires to consider imposing the death penalty, and you've got some really bad facts as to how the crime was done, and you take a vote in the jury room, and it comes down to the fact that it is going to be up to your vote to determine whether or not the defendant gets the death penalty. Could you, if the facts totally justified it under the law, cast that vote?"
A. "I don't know."
The trial judge did not abuse his discretion in excusing Mildred Cortez for cause; therefore, this assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 3
Defendant argues that there was insufficient evidence presented to convict him of first degree murder. Specifically, defendant contends that there are discrepancies in the stories of Wanda Gail Guidry, and the facts derived from the pathologist, regarding the path of the bullets which killed Warren Myers. The pathologist, Dr. Emile Laga, stated that the bullet traveled downward 30-45 degrees, while Ms. Guidry stated the defendant stood over the victim when he shot him. The defense argues that this discrepancy leaves the remainder of Ms. Guidry' testimony tainted and inadequate to prove that defendant murdered Warren Myers.
The standard of review to determine if the prosecution has proven the essential *242 elements of its case was set out in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). This test is whether any rational factfinder, viewing the evidence in the light most favorable to the prosecution, could have found the essential elements of the offense proved beyond a reasonable doubt.
Wanda Gail Guidry testified that she had accepted a ride from the defendant around 2:00 a.m. on the night of the killing. Guidry testified that defendant had said he was "going to kill hisself a nigger" because a group of blacks had beaten his brother. Guidry testified that defendant had weapons in his car, and that defendant willfully drove to "the hill" to pick up a black man. Guidry further testified that a dispute arose and that defendant beat the victim with his gun, broke his gun, drove down a quiet road, and twice shot the victim in the head.
Ms. Guidry's testimony was corroborated by Detective Roy Mallet who testified that Guidry re-created the events of the evening of the killing without assistance by him. Darla Glasscock, James Drake Fontenot and Joe Purser all corroborated the fact that the defendant had weapons in his car the night of the killing. Darla Glasscock corroborated the fact that Guidry was in the defendant's car sometime after 2:00 a.m. that night.
Rick Miller, supervisor of the police substation in Eunice, testified that defendant's.22 caliber gun was given to him by Mrs. Gibson. Donald Jewel, the supervisor of the physical evidence lab, corroborated Guidry's testimony stating that the gun was broken, and that the bullets from the "broken gun" were similar in type and class characteristics to the bullet fragments removed from the victim. Finally, Dr. Sylvan J. Manuel, the coroner, testified that he found two bullet wounds to the head, and other lacerations to the victim's head.
Dr. Emile Laga, the pathologist, stated that one bullet "went in from the back right side, went down thereby forming an angle, thirty, forty-five degrees." The pathologist testified that the other bullet "went first through the lower part of the right ear, entered, came back out, and then reentered the skin here on the right side just underneath the jaw." The pathologist testified that for a bullet to move downward thirty to forty-five degrees, the killer would have had to stand over the victim from the front. The pathologist specifically stated that the angle and the trajectory that the bullets followed are consistent with the position of the victim's body when found at the crime scene. Ms. Guidry clearly stated that after defendant made Mr. Myers fully undress, that the victim assumed the prone position with defendant "standing over him, away from him by his head." At this point, defendant shot Mr. Myers. This scenario completely supports the pathologist's account of the path of the bullet.
We find that Ms. Guidry's testimony was corroborated in so many significant aspects of the events of the night of the killing that any rational factfinder viewing the evidence in a light most favorable to the prosecution would find every element of the crime proven beyond a reasonable doubt. This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 4
Defendant contends that the trial court erred in quashing defendant's subpoena duces tecum to "Crime Stoppers." The subpoena was to obtain information concerning if payment was made, if so, when and how much. Defendant argues that while some information in the possession of organizations such as Crime Stoppers is privileged, under LSA-R.S. 15:477.1, the above requested facts are discoverable. Defendant argues that his inability to obtain this information prejudiced him substantially.
Our first determination is whether this information is privileged.
LSA-R.S. 15:477.1 states:
"A. As used in this Section, the following terms shall have the following meanings unless the context clearly requires otherwise:

*243 (1) `Crime stoppers organization' means a private, nonprofit organization that accepts and expends donations for rewards to persons who report to the organization information concerning criminal activity and that forwards the information to the appropriate law enforcement agency.
(2) `Privileged communication' means a statement by any person, in any manner whatsoever, to a crime stoppers organization for the purpose of reporting alleged criminal activity.
B. No person shall be required to disclose, by way of testimony or otherwise, a privileged communication between a person who submits a report of alleged criminal activity to a crime stoppers organization and the person who accepts the report on behalf of a crime stoppers organization or to produce, under subpoena, any records, documentary evidence, opinions, or decisions relating to such privileged communication:
(1) In connection with any criminal case or proceeding.
(2) By way of any discovery procedure.
C. Any person arrested or charged with a criminal offense may petition the court for an in camera inspection of the records of a privileged communication concerning such person made to a crime stoppers organization. The petition shall allege facts showing that such records would provide evidence favorable to the defendant and relevant to the issue of guilt or punishment. If the court determines that the person is entitled to all or any part of such records, it may order production and disclosure as it deems appropriate."
LSA-R.S. 15:477.1(B) is very broad, it covers any records, documentary evidence, opinions or decisions in any criminal case or proceeding, by way of any discovery procedure. Inasmuch as the information subpoenaed is part of the record of crime stoppers, it is privileged. The trial judge's broad reading of this "privilege" is supported by the statutory language.
We find that the information was privileged; therefore, the subpoena duces tecum was properly quashed.
Even if this information was not privileged, this defect is only harmless error. La.C.Cr.P. art. 921. Sheriff Howard Zerangue testified that a reward was in fact paid and that the award was $1000. The information was brought out by defense counsel at trial and is part of the record. Defense counsel has alleged substantial prejudice, but no prejudice has been demonstrated to support this allegation. This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 5
Defendant argues that the trial court erred in denying his motion for mistrial and admonitions for purportedly prejudicial remarks and arguments beyond the scope made during the State's rebuttal. Specifically, the defense argues that statements made by the prosecution on rebuttal concerning Gail Guidry's good reputation for truth and veracity required that the trial judge grant a mistrial. The defense also contends that prosecutorial statements made during rebuttal concerning defendant's picture not being in the paper and that the state does not vouch for the credibility of Mark Joubert require that the trial court admonish the jury to disregard the statements.
The failure of the defense to move for a mistrial when the state takes objectionable action is a waiver of the right to complain. State v. Jones, 381 So.2d 416 (La.1980). The defendant cannot complain of a failure to admonish the jury when no admonition is requested. State v. Sherer, 411 So.2d 1050 (La.1982), appeal after remand, 437 So.2d 276 (La.1983); State v. Williams, 375 So.2d 364 (La.1979). Here, the defense timely requested the mistrial and admonition. Defendant may raise this issue on appeal.
La.C.Cr.P. art. 770 prescribes the grounds for which a mistrial must be granted. These grounds are not applicable to the case sub judice.
*244 In State v. Jarman, 445 So.2d 1184 (La. 1984) and State v. Tribbet, 415 So.2d 182 (La.1982), the Louisiana Supreme Court recognized that granting a mistrial is a drastic remedy and, except when mandated by art. 770, lies in the sound discretion of the trial judge.
Under La.C.Cr.P. art. 774, which covers the scope of arguments, the attorney may comment on the evidence admitted or the lack of same and can make reasonable conclusions based on this evidence. The questioned prosecutorial statement is that Gail Guidry had a good reputation for truth and veracity. This statement was based on the fact that Guidry's character was not attacked by the defense and the fact that she worked and was a fairly solid citizen. The trial judge could have found that this was a reasonable conclusion based on evidence which was admitted, or the lack thereof, under art. 774. The trial judge did not abuse his discretion in denying the defense's request for a mistrial.
Regarding defendant's denied request for an admonition, before an allegedly prejudicial remark would require a reversal, the court must be thoroughly convinced that the remarks influenced the jury and contributed to the verdict. State v. Jarman, 445 So.2d at 1188. In this case, the fact that the prosecutor might have been in error about defendant's picture not being in the paper, the fact that the prosecution may have misstated the law, and that he did not vouch for the credibility of one of its witnesses, did not amount to enough to thoroughly convince this court that these remarks influenced the jury to return a guilty verdict. This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 6
Defendant contends that the trial court erred in refusing to admit polygraph evidence at the motion for new trial and in denying the defense's request to make a note of evidence of proffer of the polygraph evidence. The defense requests that this case be remanded to the trial court for further post trial proceedings in order for this polygraph evidence to be assessed and weighed.
At the motion for new trial, the defense originally sought to use polygraph evidence of the defendant to corroborate that of a "newly discovered witness." This witness, Barbara Arnold, allegedly would have testified that one of the prosecution's key witnesses had said that she committed the murder herself. The defense would have offered this evidence in a request for a new trial under La.C.Cr.P. art. 851(3). Before trial, however, Ms. Arnold died. Defense counsel agreed, at the motion for new trial, that the polygraph could not be used to corroborate anything now, but she sought a new trial based on the ends of justice.
The question here, as argued by the defense, is not whether the motion for a new trial was improperly denied. The question here is whether the trial court has to consider the polygraph evidence in making its decision.
In State v. Catanese, 368 So.2d 975, 982 (La.1979), the Supreme Court stated that the reasons for excluding polygraph evidence during trial does not militate against its introduction, within the trial judge's discretion, in post-trial proceeding, where guilt and innocence is not an issue and where evidence is reliable and will aid in the decision. In this case, the polygraph was sought to establish innocence, and there is no corroborating evidence showing it is reliable.
In State v. Pendergist, 444 So.2d 306 (La.App. 1st Cir.1983), writ denied, 447 So.2d 1068 (La.1984), the First Circuit found that while polygraph evidence may be admissible in a motion for a new trial, its admissibility is discretionary with the judge. In the case sub judice, it has not been shown that the trial judge abused his discretion. The defense also argues for a new trial based on an ends of justice argument. La.C.Cr.P. art. 851(5).
In State v. Wilson, 463 So.2d 655 (La. App. 4th Cir.), writ denied, 466 So.2d 466 (La.1985), the court of appeal stated that they could not accept polygraph evidence as determinative of the truth of defendant's testimony at trial for the purposes of *245 granting the defendant a new trial because that would defeat the rule that polygraph evidence is not admissible in criminal trials. It was not error for the trial court to refuse to accept polygraph evidence in the motion for new trial; there was no showing that the ends of justice required the admission. Since it has not been shown that the trial judge abused his discretion in denying defendant's motion for a new trial, this assignment of error is without merit.
For the above and foregoing reasons, defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[*] Hon. William A. Culpepper, Judge, Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.
[1] Mr. Myers suffered from sickle cell anemia, a speech impediment, and partial paralysis of his left arm and leg. He was in his early twenties, 5'6" tall, and was functioning as a retarded person.