524 So.2d 871 (1988)
STATE of Louisiana, Plaintiff-Appellee,
v.
Rodolfo SALAS MARTINEZ, Defendant-Appellant.
No. CR87-239.
Court of Appeal of Louisiana, Third Circuit.
February 3, 1988.
Writ Denied May 13, 1988.
*872 Michael J. Bonnette, Natchitoches, for defendant-appellant.
Mike Henry, Dist. Atty., Natchitoches, for plaintiff-appellee.
Before LABORDE and KNOLL, JJ., and CULPEPPER, J. Pro Tem.[*]
KNOLL, Judge.
Defendant, Rodolfo Salas Martinez, was charged by grand jury indictment with the crime of second-degree murder, a violation of LSA-R.S. 14:30.1. A twelve member jury, by a vote of ten to two, found defendant guilty as charged. Pursuant to the mandatory sentence provided by R.S. 14:30.1B, the trial court; sentenced defendant to serve life imprisonment at hard labor without benefit of parole, probation or suspension of sentence.
Defendant appeals, assigning as error that: 1) the trial court erred in not allowing Dr. Brouillette to testify as to the effects of alcohol on defendant's behavior; 2) the trial court erred in allowing the testimony of Charles Rachal into evidence as part of res gestae; 3) the trial court erred in not allowing the police officer to testify whether he felt defendant was intoxicated; 4) the trial court erred in not allowing defendant to challenge Ms. Carrie Canady for cause; and 5) the jury verdict of second-degree murder is contrary to the law and evidence. Defendant failed to brief assignments of error 1, 2, and 3 and, therefore, are considered abandoned. U.R.C.A. 2-12.4.

FACTS
On August 2, 1986, defendant and his friend, Joe Lynn Neal, left Mora, a community located in Natchitoches Parish, Louisiana, at approximately noon and rode around all afternoon while consuming approximately a case of beer between them. Between eight and nine o'clock that night, defendant and Mr. Neal joined a few friends in Derry, Louisiana, at the J & M Club where they drank at least two fifths of Jack Daniel whiskey. Throughout this time defendant was carrying a loaded .22 caliber pistol tucked in his belt under his shirt.
Just after midnight, defendant and Charles Rachal, the bartender of the J & M Club, had an argument. Defendant drew his gun and threatened Rachal. As defendant went outside the bar, the bartender asked his sister, who was helping tend bar, to telephone the police.
The victim, McKinley Peter Monette, was also drinking at the J & M Club. Shortly after midnight, defendant exited the bar and either dropped or threw his drink on the ground near the victim and three eyewitnesses: Glen Morris; Joe Johnson, Jr.; and Joseph Lee Jones. These witnesses *873 testified that Joseph Johnson, Jr. said, "At least he [defendant] could have said excuse me." In response, defendant asked, "Who called me a bitch?" The victim said, "Nobody called you a bitch." Defendant then began talking to a girl who was in the parking lot, but returned to the group of four men and said, "You want to fight me? You want to fight me?" The victim accepted defendant's challenge, but before the fighting ensued, defendant pulled out a .22 caliber pistol from under his shirt and shot the victim. The victim then wrestled defendant to the ground, got the gun from him, and shot defendant in the shoulder. The victim then stumbled into the bar where he collapsed. The victim was pronounced dead on arrival at the Natchitoches Parish Hospital.
Dr. Lynn Brouillette, the assistant coroner, concluded that the victim received a single gunshot wound that severed the abdominal aorta and caused him to bleed to death. Dr. Brouillette estimated that the gun was fired from a distance of three to eight feet from the victim. Terry Franklin, a firearm's expert testified that the bullet which struck the victim was fired from defendant's gun at a distance of three to five feet.
Defendant and the victim were taken to the Natchitoches Parish Hospital, where a blood sample was drawn from defendant. James R. Bogel, a forensic chemist for the North Louisiana Crime Lab, determined that defendant's blood alcohol level was 0.29.

CHALLENGE FOR CAUSE
Defendant contends that the trial court erred in denying his challenge for cause of Carrie Canady, a prospective juror. Defendant argues that Mrs. Canady, who is the mother of the chief administrator of the Natchitoches Parish Sheriff's Office and knew some of the deputies who would testify in this case, should have been challenged for cause.
A defendant may assign as error the trial judge's refusal to sustain his challenge of a juror for cause provided he timely objects stating the nature and grounds of the objection. LSA-C.Cr.P. Art. 800(A); State v. Mills, 505 So.2d 933 (La.App. 2nd Cir.1987), writ denied, 508 So.2d 65 (La.1987).
A determination of the qualifications of a juror is within the sound discretion of the trial court. State v. Edwards, 419 So.2d 881 (La.1982).
LSA-C.Cr.P. Art. 797(3) provides:
"The state or the defendant may challenge a juror for cause on the ground that:
* * * * * *
(3) The relationship, whether by blood, marriage, employment, friendship, or enmity between the juror and the defendant, the person injured by the offense, the district attorney, or defense counsel is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict; ..."
It is well settled that mere relationship of a prospective juror to a law enforcement officer is not itself grounds for cause. State v. Smith, 430 So.2d 31 (La.1983). The poignant question is whether the juror can independently assess the credibility of each witness. In State v. Gintz, 438 So.2d 1230 (La.App. 3rd Cir.1983), we held that broad discretion is given to a trial judge in determining whether to sustain a challenge for cause. Absent an abuse of that discretion, we will not upset the trial court's judgment. Id. at 1234.
Defendant fails to show that the trial judge erred in refusing to excuse Mrs. Canady for cause. The record of the voir dire examination clearly establishes that Mrs. Canady testified that the fact that she knew some of the deputies would not cause her any problems in serving on the jury. She also testified that she could apply the law as given by the judge to the facts of the case. In denying defendant's challenge for cause, the trial judge stated that he knew Mrs. Canady personally and concluded that her testimony indicated her willingness to be fair and impartial in deciding the case.
*874 For these reasons, we conclude that defendant's argument lacks merit.

SUFFICIENCY OF THE EVIDENCE
Defendant next argues that the verdict of second-degree murder was contrary to the law and the evidence, and that the proper verdict should have been manslaughter. Defendant contends that the level of his intoxication negated the specific intent essential to the crime of second-degree murder. The State argues that although the evidence of defendant's intoxication was uncontroverted, there was no evidence from any of the witnesses that would lead to the conclusion that the defendant was so intoxicated that he did not have the requisite criminal intent.
Second-degree murder is the killing of a human being when the offender has a specific intent to kill or inflict great bodily harm. LSA-R.S. 14:30.1. Specific intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. LSA-R.S. 14:10(1). Although intent is a question of fact, it need not be proven as a fact, it may be inferred from the circumstances of the transaction. LSA-R.S. 15:445.
Voluntary intoxication operates as an affirmative defense in certain cases. LSA-R.S. 14:15(2) provides:
"The fact of an intoxicated or drugged condition of the offender at the time of the commission of the crime is immaterial, except as follows: ... (2) where the circumstances indicate that an intoxicated or drugged condition has precluded the presence of a specific criminal intent or of special knowledge required in a particular crime, this fact constitutes a defense to a prosecution for that crime."
The burden is upon the defendant to prove the existence of such a state of intoxication at the time of the offense. State v. Tezeno, 507 So.2d 291 (La.App. 3rd Cir.1987). Specific intent is a legal conclusion which the trier of fact ultimately resolves. State v. Grisby, 450 So.2d 1065 (La.App. 1st Cir. 1984). Finally, in State v. McKeever, 407 So.2d 662 (La.1981), the Louisiana Supreme Court held that where the jury has heard all the evidence and received the proper instructions from the trial judge regarding an intoxication defense, its verdict should not be impinged upon absent an abuse of the jury's discretion.
By arguing that the State failed to prove beyond a reasonable doubt that defendant had the specific intent to kill or inflict great bodily harm, defendant is, in effect, attacking the sufficiency of the evidence to support his conviction. The standard of appellate review in cases involving challenges to the sufficiency of the evidence is whether, viewing the facts in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. State v. Edwards, 400 So.2d 1370 (La.1981).
The question of specific intent was squarely placed before the jury. Further, the trial court properly instructed the jury on the question of intoxication as a defense to the crime of second-degree murder.
It is uncontroverted that approximately 12 hours preceding the crime defendant and his friends consumed approximately a case of beer and two fifths of whiskey, and that shortly after the crime defendant's blood alcohol level was 0.29. Although defendant's blood alcohol level was high, the record shows there was sufficient evidence to substantiate that defendant had the requisite criminal intent to commit the crime for which he was convicted.
Joe Neal, defendant's friend, testified that defendant bought the .22 caliber pistol in Alexandria on August 1, less than two days prior to the commission of this crime, and that when they left Mora at approximately noon on the date of the offense, defendant had the pistol stuck in his pants under his shirt. Charles Rachal, the bartender, testified that minutes before the shooting, defendant pulled his gun inside the bar, told the bartender he was not man enough to eject him from the bar, and told the bartender he was going "to blow him [the bartender] away."
*875 Deputy Sheriff James Scott stated that when he arrested defendant, defendant told Deputy Scott that the victim provoked him. The witnesses to the shooting clearly contradicted defendant's version, all stating that defendant provoked a fight and shot the victim before any blows were exchanged. Hurbert Rachal, one of the bystanders in the parking lot, also testified that after the shooting defendant had the presence of mind to ask Rachal for his gun which was tossed under Rachal's automobile during the fracas.
Viewing the evidence in the light most favorable to the prosecution, it is clear that a rational trier of fact could have concluded beyond a reasonable doubt that defendant was guilty of second-degree murder. Therefore, this assignment is without merit.

DECREE
For the foregoing reasons, the conviction of the defendant, Rodolfo Salas Martinez, is affirmed.
AFFIRMED.
NOTES
[*] Judge William A. Culpepper, Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.