567 So.2d 806 (1990)
STATE of Louisiana
v.
Edward Darnell OWENS.
No. CR89-1339.
Court of Appeal of Louisiana, Third Circuit.
October 3, 1990.
*807 Joseph D. Toups, Jr., Mansfield, for defendant-appellant.
Don Burkett, Dist. Atty., Many, for plaintiff-appellee.
Before GUIDRY, STOKER and LABORDE, JJ.
GUIDRY, Judge.
On January 26, 1989, the defendant, Edward Darnell Owens, was found guilty by a jury of twelve of aggravated rape, in violation of La.R.S. 14:42; aggravated kidnapping, in violation of La.R.S. 14:44; attempted second degree murder, in violation of La.R.S. 14:27 and La.R.S. 14:30.1; and, armed robbery, in violation of La.R.S. 14:64. He was sentenced to life imprisonment without benefit of parole, probation or suspension of sentence for aggravated rape; life imprisonment without benefit of parole, probation or suspension of sentence for aggravated kidnapping; fifty years at hard labor for attempted second degree murder; and, fifty years at hard labor for armed robbery. The sentences were ordered to run consecutively.
Defendant appeals assigning the following errors:[1]
1. The trial court erred in denying his challenge for cause of juror, Lois Strickland.
2. The trial court erred in sustaining the State's objection to hearsay testimony from Stanley Owens, defendant's brother, to show defendant's state of mind and intention at a point close in *808 time to the incident giving rise to the prosecution.
3. The trial court erred in allowing the viewing by the jury of a videotape of the victim taken shortly after the incident.
4. The trial court erred in defining "reasonable doubt" in its charge to the jury.

FACTS
On August 13, 1988, Kaylynn Remedes, the victim, worked the morning shift at Strahan's Restaurant located on Highway 171 just south of Many, Louisiana. After work, between 3:00 and 4:00 p.m., the victim left and arrived home in nearby Mount Carmel at about 4:30 p.m. Later that afternoon, the victim returned to Many to go shopping and to meet a friend for a movie. The victim never met her friend. At approximately 8:00 p.m., the victim went to Strahan's and called her mother to inform her that she was on her way home. The victim left Strahan's to go home after about twenty or thirty minutes.
On her trip home, the victim's car was hit from behind. The victim pulled onto the side of the road, turned on her emergency flashers and put her car in park. The victim partially rolled down her car window as a man, later identified as the defendant, approached her car asking to see her insurance card. The victim recognized the defendant because he was the boyfriend of a co-worker, Shirley Frazier. As the victim turned to get her insurance papers, the defendant grabbed her and pulled her out of the car. The victim testified that she felt a gun touch her head as the defendant dragged her towards his car and told her that he was going to kill her. Attempting to get away from the defendant, the victim hit him in the side and ran towards her car. However, as she opened her car door the defendant kicked it shut and the two continued to struggle. The defendant pushed her towards the trunk of his car but she broke away from him and ran towards the highway away from the ditch. The defendant jumped on the victim's back and slammed her against the concrete. The defendant dragged the victim into the ditch, threw a tire on her chest and got on top of the tire. The defendant told the victim, "You know I can kill you right now, don't you, bitch". As this occurred, the victim saw some cars pass by on the highway. The defendant again hit the victim in the face and pushed her into the trunk of his car. The defendant slammed the trunk on her hand as she tried to get out. When she pulled her hand back into the trunk, the defendant shut the trunk locking the victim inside.
While in the trunk, the victim heard the defendant go to her car and then return to his car. She could then hear the defendant going through her purse asking her for money. The defendant threatened to cut off the victim's hand when she reached through a hole from the trunk and was able to touch the glass. The defendant then drove off with the victim locked in the trunk. The victim thereafter lost consciousness for an indeterminate length of time and when she came to she realized that they were on a bumpy road.
After the car stopped, the defendant opened the trunk and pulled the victim out of the trunk. As she tried to get away from him, he removed the victim's remaining clothes, raped her and continued to beat her as she struggled to get away. The defendant then jerked the victim up by the hair of her head and told her that he was taking her to Shirley Frazier's house. The victim begged the defendant not to kill her, but he said that he had to kill her because she knew who he was.
The defendant started stabbing the victim in the back with a screwdriver. The victim fell on the ground and was laying in an ant pile as the defendant stabbed her in the chest. The defendant kicked her several times. The victim pretended that she was dead and the defendant walked to his car and drove off. Later, the victim got up and walked down a dirt road until she reached the George home. Mrs. George opened the door and summoned medical assistance. The victim was transported to a local hospital where she was treated for her injuries.
*809 The defendant spent the night with a cousin in Mora, Louisiana. The next day, Troy Clifton, defendant's cousin, helped defendant tow his car to Clifton's house. Later that day, the defendant returned to Many where he turned himself over to the police upon hearing that the police were looking for him.
The defendant's car was later recovered by police from his uncle's house in Mora. The police found traces of blood on the rear car bumper and on the jack which was inside the trunk.
After a jury trial, the defendant was found guilty on all four charges.

ASSIGNMENT OF ERROR NO. 1
Defendant contends that the challenge for cause which was improperly denied as to juror, Lois Strickland, resulted in his having to use his last peremptory challenge. Thus, defendant was unable to challenge Kathy Sepulvado, the next unsuitable juror, a young white female.
During examination, Lois Strickland stated that she had heard about the case and that, for a short while, her daughter attended school with the victim. Further examination of this juror revealed that although the two girls went to school together, they were not closely associated. In addition, the juror testified that she would have no problem "in trying to be impartial and just looking at the evidence". She stated that although she knew the victim's parents, this would pose no particular problem. However, Mrs. Strickland testified that her relationship with the victim and her family "might" remain in her mind during the trial and sympathy "might" arise during the trial.
After further interrogation by the court, Mrs. Strickland testified that she would try to set aside any sympathy she might have as a human being for the victim and would decide the case based on the facts and the court's instructions.
A charge of bias or impartiality may be removed if a witness is rehabilitated. A prospective juror can be rehabilitated if the trial court is satisified that the juror can render an impartial verdict according to the evidence and instructions given by the court. State v. Gibson, 505 So.2d 237 (La.App. 3rd Cir.1987), writ denied, 508 So.2d 66 (La.1987). The trial court has wide discretion in ruling on a challenge for cause, and its ruling will not be disturbed on appeal absent a showing of abuse of discretion. State v. Gintz, 438 So.2d 1230 (La.App. 3rd Cir.1983).
The trial court, after rehabilitation, was satisfied that Mrs. Strickland would render an impartial verdict according to the evidence and instructions given by the court. We do not find that the trial court abused its discretion in denying the defendant's challenge for cause.

ASSIGNMENT OF ERROR NO. 2
The defense called Stanley Rex Owens, defendant's brother, as a witness and questioned him, allegedly, in an attempt to show the defendant's intention and state of mind. The State objected on the grounds of hearsay. The court sustained the objection over defense counsel's argument that it was the words of the accused and an exception to the hearsay rule. Defense counsel did not inform the court that the purpose of the testimony was to prove defendant's state of mind.
Hearsay statements are generally inadmissible because of their historic unreliability unless they fit into one of the recognized exceptions. One exception involves out-of-court declarations introduced to prove the state of mind of the declarant. State v. Sheppard, 371 So.2d 1135 (La. 1979); State v. Landry, 524 So.2d 1261 (La.App. 3rd Cir.1988), writ granted in part, 531 So.2d 254 (La.1988), appeal after remand, 546 So.2d 1231 (La.App. 3rd Cir. 1989). La.Code of Evidence art. 803(3). However, state of mind evidence is admissible only if the particular person's state of mind is itself at issue or is relevant to prove a fact at issue. State v. DiLosa, 529 So.2d 14 (La.App. 5th Cir.1988), writ denied, 538 So.2d 1010 (La.1989).
Defendant makes no showing that defendant's state of mind was at issue or was relevant to prove a fact at issue. Therefore, the evidence sought to be introduced *810 was irrelevant and had no probative value and was properly excluded.

ASSIGNMENT OF ERROR NO. 3
Defendant contends that the trial court erred in permitting a videotape to be presented to the jury of an interview with the victim, showing a close-up of her face while she was describing the crime committed. The sound portion of the videotape was eliminated, however, defendant contends that the jury had the opportunity to read the lips of the victim and thus his right to confrontation was violated. Defendant further argued that the videotape, introduced to show the extent and nature of the victim's injuries, should have been disallowed upon objection because the "best evidence" was several still photographs depicting the condition of the victim.
There is nothing in the record which would support defendant's contention that his right of confrontation was violated by the possibility that one or more jurors were able to read the victim's lips. In any event, during trial the victim testified at length and defendant had the opportunity and did in fact cross-examine the victim at length. We find no merit to defendant's contention that the introduction of the videotape, with the sound portion eliminated, violated his right to confrontation.
We find defendant's other objection to the introduction of the videotape equally without merit. The physical condition of the victim shortly following the crime is highly relevant to the aggravated rape and attempted second degree murder charges. The probative value of the videotape is substantial. The general rule is that the trial jury is entitled to view photographic evidence introduced during the trial. In its fact-finding and guilt determination function, the jury is entitled to the benefit of all the evidence. State v. James, 339 So.2d 741 (La.1976). However, photographs which are unduly prejudicial in nature are not admissible into evidence. Photographs which illustrate any fact or shed light upon any fact at issue in the case or which are relevant to describe the person, place, or thing depicted, are generally admissible. The admissibility of videotapes is governed by the same rules as still photographs. State v. Burdgess, 434 So.2d 1062 (La.1983). To be admissible, evidence must be relevant to a material issue. La.R.S. 15:435. Relevant evidence is that tending to show the commission of the offense and the intent, or tending to negate the commission of the offense and the intent. La.R.S. 15:441. See also La.C.E. art. 401, art. 402 and art. 403 (effective January 1, 1989).
The videotape portrays close-ups of the victim's face. The trial court did not abuse its discretion in admitting the videotape into evidence. Defendant has not shown that the prejudicial effect of the videotape clearly outweighed its probative value, since the video was clearly relevant. Moreover, there is sufficient other evidence to support defendant's conviction.
The fact that the videotape was introduced in addition to several still photographs and was therefore somewhat cumulative is not a bar to its introduction. State v. Garrison, 400 So.2d 874 (La.1981); State v. Bonanno, 373 So.2d 1284 (La.1979).

ASSIGNMENT OF ERROR NO. 4
Defendant contends that the language of the jury charge on reasonable doubt went "far beyond the threshold of permissible language, resulting in an impermissible alienation of the burden of proof placed on the state".
The jury charge, in part, stated:
"In all criminal cases, the State must prove every element of the crime charged, or of a crime included therein, beyond a reasonable doubt. The burden of proof is always on the State.
While the State must prove the guilt of the defendant beyond a reasonable doubt, it is not required to prove his guilt to an absolute certainty. It is sufficient that the State prove the guilt of the defendant beyond a reasonable doubt. You, the jury, must decide whether the State has proven the guilt of the defendant beyond a reasonable doubt."
Defendant complains about the following language, in particular:
"A reasonable doubt is not a mere possible doubt; it should be an actual doubt. It is such a doubt as a reasonable man *811 would seriously entertain. It is a doubt that one could give a reason for. It is an honest, substantial misgiving, or doubt, arising from the proof or lack of proof in the case."
Defendant contends that this language gives to the defendant an affirmative duty to present evidence so that, in order to find doubt, the juror could point to the evidence presented by the defendant as his reasons for having doubt.
Defendant cites State v. McDaniel, 410 So.2d 754 (La.1982), wherein the Supreme Court found that terms such as "great uncertainty" and "morally uncertain" were terms that could mislead or confuse a jury. However, we further note that in McDaniel, the Supreme Court additionally found the jury charge to be clearly wrong and not in compliance with La.C.Cr.P. art. 804. McDaniel is clearly distinguishable.
In State v. Holmes, 516 So.2d 184 (La. App. 4th Cir.1987), the court held that the trial court's definition of "reasonable doubt", using words such as "serious", "actual", and "substantial" was not erroneous and did not cause any prejudice by misleading the jury into applying an insufficient standard. The language in the present case contains some of these same words, and after a careful review of the jury charge, it does not appear that the jury could be misled or confused by the instructions.
We find that the trial court adequately advised the jury as to the concepts of reasonable doubt and presumption of innocence. Furthermore, we find reasonable persons of ordinary intelligence would have no problem in understanding the definition of "reasonable doubt" and in applying a sufficient standard.
Thus, this assignment of error also lacks merit.
For the reasons stated, the defendant's convictions and the sentences imposed are affirmed.
AFFIRMED.
NOTES
[1] Defendant did not brief his fifth assignment of error. We consider that assignment of error abandoned. State v. Dewey, 408 So.2d 1255 (La.1982).