558 So.2d 719 (1990)
STATE of Louisiana, Plaintiff-Appellee,
v.
Stephen E. BLAND, Defendant-Appellant.
No. CR89-958.
Court of Appeal of Louisiana, Third Circuit.
March 14, 1990.
*722 Jay C. Zainey, Metairie, for defendant-appellant.
Richard Ieyoub, Dist. Atty., Lake Charles, for plaintiff-appellee.
Before DOUCET, LABORDE and KNOLL, JJ.
KNOLL, Judge.
Stephen E. Bland was indicted on December 2, 1986, for the second-degree murder of David Bird Tarver, Jr., a violation of LSA-R.S. 14:30.1. On March 22, 1988, by a 10 to 2 verdict, the jury convicted defendant of manslaughter, a violation of LSA-R.S 14:31. After conducting a pre-sentence investigation, the trial court sentenced defendant to serve twenty-one years at hard labor, the first five years to be served without benefit of parole, probation, or suspension of sentence because he used a firearm in the commission of the crime. Defendant appeals his manslaughter conviction and sentence, relying on twenty-eight assignments of error, ten of which have been briefed. Assignments of error which are not briefed are considered abandoned. State v. Dewey, 408 So.2d 1255 (La.1982).

FACTS
This criminal case centers around the actions of several eighteen year olds.
*723 On November 19, 1986, David Reid and David Bird Tarver, Jr., high school classmates, planned to go duck hunting after school. Reid went home after 2:45 p.m., prepared his hunting gear, but did not put it in the truck, and drove his four wheel drive Nissan pickup truck to Tarver's house. There, they loaded Tarver's sixteen gauge shotgun and boat cover inside the truck cab, and placed several other hunting items in the truck bed. Tarver and Reid then returned to Reid's home to pick up additional gear and to consult with Reid's mother before leaving. After talking with Reid's mother, Reid and Tarver ran an errand and by the time they returned home, it was too late to go hunting.
Instead, Tarver stayed at Reid's home, and after Reid's mother left, the two of them each drank a six-pack of beer until 7:15 p.m. At approximately 8:00 p.m., Reid and Tarver decided to "cruise" for girls in Reid's pickup truck. Tarver drove because Reid's license had earlier been suspended.
After stopping at a fast food restaurant to purchase milk shakes, Tarver and Reid proceeded north on Ryan Street and turned west on Clarence Street. While stopped at a signal light at Clarence Street and Lakeshore Drive, Tarver and Reid noticed an automobile next to them which they thought contained one male and three females; in fact, there were two males and two females. In the vehicle were Terry Haley, the driver, Bridgette Bertrand, the owner of the car, Billie Jo McDonald, and the defendant herein.
At the signal light, Tarver asked Reid if he wanted to "mess with" the people in the Haley vehicle; Reid responded negatively. Nevertheless, after Tarver and Reid stared and laughed at the occupants of the neighboring car, Haley, and possibly defendant, and Tarver exchanged words. At this time, Tarver retrieved his shotgun from behind the seat, and stuck the barrel of the gun out of his window, just so the occupants of the Haley vehicle could barely see it. Upon seeing the gun, Haley told Tarver that if that was a gun, he'd better use it, and also told him that if he thought he was tough he should meet them at the Civic Center. Tarver then removed the gun from the window, placed it on the floorboard, pointing forward, between the front seats of the pickup truck, and proceeded to the Civic Center. The Haley vehicle did not go directly to the Civic Center.
As Tarver drove on Bor du lac Drive, Tarver placed the shotgun on his lap, and told Reid to put two shotgun shells in the gun's magazine. After initially refusing, Reid complied with Tarver's request. Reid next returned the gun to Tarver, who inserted a shell into the chamber and again placed the sixteen gauge shotgun in his lap.
Tarver and Reid parked at the Civic Center, facing an exit, but left the truck engine running and its lights illuminated. Approximately ten to fifteen minutes later, Haley arrived at the Civic Center and parked about fifteen feet behind Tarver and Reid. Tarver again stuck the barrel of the shotgun out of the driver's window, and Haley testified that the gun was pointed back toward their automobile.
Haley and the other two passengers remained in the vehicle. Defendant exited the Haley vehicle and approached the passenger side of Reid's pickup truck, telling him that "he'd better put the gun up or he (defendant) would shove the gun up Tarver's ass." From the passenger side of the pickup truck, defendant and Tarver argued and struggled over the gun, pulling back and forth on it, but defendant was not able to wrest control of the gun from Tarver. Defendant then struggled with Reid, trying to disarm Reid of a metal file. Eventually, Reid just threw the file in the back of the cab. Defendant then addressed Tarver saying, "Boy, you'd better speak to me or I'm going to hit your friend [Reid]." Twice during this interval Reid urged defendant to leave. Defendant never struck Reid.
Defendant then left the passenger side of the pickup truck, and went around the back of the truck to the driver's window. There, he and Tarver again struggled over the control of the shotgun; defendant first grabbed the barrel of the gun and tried to pull it away from Tarver. In the meantime, Haley went to the passenger side of *724 the vehicle, grabbed Reid by the throat, and began choking him. As Reid struggled free, he heard the shotgun fire. When Reid turned to his left, he saw that the left side of Tarver's head had been struck by the shotgun blast.
Defendant and his friends left the scene of the shooting with the shotgun, and drove to the Calcasieu Parish Sheriff's Office. Defendant turned over the gun to one of the Sheriff's Deputies, and told him that he had just shot someone at the Civic Center. Defendant further told the police that he did not know the gun was loaded and that he did not mean to do it. Defendant remained at the Sheriff's Office. Haley accompanied deputies to the Civic Center parking lot, and emergency personnel were summoned. When the police arrived, standers-by had removed Tarver from the cab of the pickup and placed him on the ground. After administering emergency medical treatment, medical personnel brought Tarver to St. Patrick's Hospital. Emergency room doctors found that Tarver had been shot in the head, with the blast entering to the rear of the left ear and exiting through the mid-face area. Despite surgical intervention, Tarver died two days later at the hospital as a result of the shotgun blast to his head.
After bringing the evidence before a grand jury, defendant was indicted for second-degree murder of Tarver.

CHALLENGES FOR CAUSE
Defendant first contends that the trial court improperly denied two challenges for cause, and that forced him to exercise two peremptory challenges. Defendant argues that this deprived him of the later use of these peremptory challenges, since he exhausted all his peremptory challenges.
LSA-C.Cr.P. Art. 797 states, in pertinent part:
"The state or the defendant may challenge a juror for cause on the ground that:
* * * * * *
(3) The relationship, whether by blood, marriage, employment, friendship, or enmity between the juror and the defendant, the person injured by the offense, the district attorney, or defense counsel, is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict; ..."
The mere relationship between a prospective juror and a party named in LSA-C. Cr.P. Art. 797(3) is not sufficient grounds for a challenge for cause. Rather, the facts must reasonably lead to the conclusion that the relationship would influence the juror in arriving at a verdict. State v. Clark, 340 So.2d 208 (La.1976), cert. denied, 430 U.S. 936, 97 S.Ct. 1563, 51 L.Ed.2d 782 (1977).
A charge of bias may be removed if a witness is rehabilitated. State v. Gibson, 505 So.2d 237 (La.App. 3rd Cir.1987), writ denied, 508 So.2d 66 (La.1987). A prospective juror can be rehabilitated if the trial court is satisfied that the juror can render an impartial verdict according to the evidence and instructions given by the court. Id., at page 240.
The trial court has wide discretion in ruling on a challenge for cause, and its ruling will not be disturbed on appeal absent a showing of abuse of discretion. State v. Gintz, 438 So.2d 1230 (La.App. 3rd Cir.1983).
Defendant first contends that the trial court should have granted his challenge for cause of Judy Bogle. He argues that she was a librarian at the middle school where Tarver, the victim, once attended, and that she knew him as a student.
The prospective juror, Mrs. Bogle, testified that she knew that the victim had attended the school where she worked, and she could not say if that fact might influence her arrival at a verdict. Mrs. Bogle did not teach either the victim or the defendant.
Although Mrs. Bogle testified upon examination by defendant that she could not really say if her knowledge of the victim might influence her arrival at a verdict, she *725 also stated that she did not think that her knowing the victim would make her partial to the State.
During the trial court's questioning, Mrs. Bogle acknowledged that she accepted defendant's innocence until proven guilty, that she could accept from the trial court the law applicable to the case, and that she could be fair and impartial despite her knowledge of the victim.
After carefully reviewing the testimony of Mrs. Bogle, we cannot say that the trial court abused its wide discretion in finding her impartial, and that her relationship with the victim would not influence her in arriving at a verdict.
Defendant next contends that the trial court erred in denying his challenge of Mrs. Calvin Demeritt for cause. Defendant's challenge was based on her past employment as a Calcasieu Parish Deputy Sheriff twenty years ago, and that her husband carried a police commission because his employment as a security guard at a local refinery required him to carry a gun.
Previous associations with either law enforcement agencies or personnel will not alone disqualify a prospective juror from service. Nevertheless, such associations should be closely scrutinized by the trial court and the appellate court. State v. Jones, 474 So.2d 919 (La.1985), cert. denied, 476 U.S. 1178, 106 S.Ct. 2906, 90 L.Ed.2d 992 (1986). Thus, the question presented is whether the prospective juror can assess the credibility of each witness independent of his relationship to law enforcement. This determination is within the great discretion of the trial court, and will not be overturned absent an abuse of that discretion. State v. Smith, 430 So.2d 31 (La.1983).
In the case sub judice, Mrs. Demeritt testified that she ceased working at the Sheriff's Department over twenty years prior to trial, and that she was a reference clerk while employed there. She testified that she had not maintained any constant contacts with the Sheriff's Department. She also stated that although her husband carried a deputy's commission in order to carry a gun as part of his employment as a security guard, he never performed any duties as a law enforcement officer. Mrs. Demeritt also testified that when she was employed in the Sheriff's Department, the Sheriff was Henry Reid. In the case sub judice, one of the State's key witnesses was David Reid, the son of the late Henry Reid. In conclusion, Mrs. Demeritt further told the trial court that her prior law enforcement history would not influence her ability to make a fair and impartial decision in the case.
Again, after carefully reviewing the testimony of Mrs. Demeritt, we cannot say that the trial court abused its discretion in denying defendant's challenge of this prospective juror for cause. Mrs. Demeritt's association twenty years ago with the Sheriff's Department and her husband's employment as a security guard were not sufficient to establish a challenge for cause. Moreover, at no time did defendant show that Mrs. Demeritt's relationship with former Sheriff Reid would influence her evaluation of David Reid's testimony.
Therefore, this assignment of error lacks merit.

CROSS-EXAMINATION OF STATE WITNESSES
Defendant next contends that the trial court erred in sustaining the State's objections to testimony defendant was trying to elicit from Deputy Samuel Opferkuch, and three eyewitnesses to the crime, Greg Thorn, Michael E. White, and Huey Pete.
An irregularity or error cannot be availed of after verdict unless it was objected to at the time of the occurrence. LSA-C.Cr.P. Art. 841. The party aggrieved should, at the time the ruling is made, make known to the trial court his objections and the grounds therefor. This allows the trial court to rule on the objection and the grounds will be preserved for appeal. LSA-C.Cr.P. Art. 844; State v. Arvie, 505 So.2d 44 (La.1987).
*726 Where defense counsel acquiesces when the trial court sustains the State's objection to examination of a witness, that objection is waived. State v. Huizar, 414 So.2d 741 (La.1982).
In the case sub judice, we have carefully reviewed the testimony of Samuel Opferkuch, Greg Thorn and Michael E. White, and find that the defendant failed to object based on the contentions raised in this appeal. Therefore, we find that these assignments of error are not properly before us.
We next address those assignments of error involving Huey Pete. Two aspects of Pete's testimony are involved.
In the first instance, defendant's contention on appeal is that he was unable to fully cross-examine Pete at a hearing, held out of the presence of the jury, on whether his testimony should be excluded because he violated the trial court's sequestration order. Defendant attempted to cross-examine Pete about alleged prior inconsistent statements Pete gave to an investigator some months prior to trial. The State's objection on the grounds of relevancy was sustained by the trial court, and defendant's objection to that ruling was noted.
The relevance of specific evidence is determined in relation to the scope of the issues in the case at hand. Irrelevant evidence is excluded in order to aid the trier of fact in focusing on what actually is at issue. State v. Ludwig, 423 So.2d 1073 (La.1982). The trial court is vested with wide discretion when ruling on the relevancy of evidence, and its ruling will not be disturbed absent a clear abuse of that discretion. State In Interest of Miles, 441 So.2d 61 (La.App. 3rd Cir.1983).
At the time of this objection, the action in the trial court was focused on whether Pete's testimony should be excluded because of his violation of a sequestration order. In assessing this issue, Pete had been examined by the State and defense counsel was questioning him on cross-examination about a prior inconsistent statement he gave to defendant's mother about the number of guns he thought were involved in the shooting. After carefully reviewing the record, we find that the trial court properly ruled that the defendant's question regarding Pete's credibility was irrelevant to a determination of whether Pete's testimony should be withheld from the jury because of his violation of the sequestration order. Moreover, when the jury was called back into the courtroom, defense counsel was able to fully cross-examine Pete about his prior inconsistent statement to the investigator. In admitting that he made a prior inconsistent statement, the jury was fully apprised of Pete's credibility and could properly consider his testimony in its evaluation of the evidence.
In an ancillary matter, defendant also contends that the trial court erred in disallowing his question of Pete (relative to his prior inconsistent statement concerning the number of weapons he saw in the victim's vehicle) about whether he thought it was funny to lie to people. Here, too, we find that the trial court did not manifestly abuse its discretion in excluding this question as irrelevant. As detailed hereinabove, the jury heard Pete's in-court testimony and was able to contrast that to Pete's prior inconsistent statement. Whether Pete considered it was funny to lie to people was irrelevant to the jury's assessment of the evidence and argumentive. In no way was defendant deprived of confronting this witness as suggested by defendant.
Therefore, we find that these assignments of error are without merit.

VICTIM'S REPUTATION FOR VIOLENCE
Defendant next contends that the trial court erred in sustaining the State's objection when defense counsel asked David Reid, the only passenger in the vehicle when the victim was shot, if he knew that the victim had vicious propensities to fight strangers. In making this assertion, defendant relies upon LSA-R.S. 15:482 (repealed as of January 1, 1990, and now embodied in LSA-C.E. Art. 404) which provided:
"In the absence of evidence of hostile demonstration or of overt act on the part *727 of the person slain or injured, evidence of his dangerous character of of his threats against accused is not admissible."
As cited hereinabove, an irregularity or error cannot be availed of after verdict unless it was objected to at the time of the occurrence and the grounds made known to the trial court. Only then will an an objection be reserved for appellate review. Nevertheless, if an error is so fundamental that it calls into question the reliability of the fact finding process, the contemporaneous objection rule has not been applied. State v. Green, 493 So.2d 588 (La.1986); State v. Leonard, 543 So.2d 975 (La.App. 3rd Cir.1989). Because of the nature of the evidence excluded herein, we shall address defendant's contention.
The jurisprudence has interpreted LSA-R.S. 15:482 (repealed) to mean that evidence of the dangerous character of the victim is admissible only if the accused first produces evidence that the victim engaged in a hostile demonstration or an overt act against the accused at the time of the incident, of such a character as to create in the mind of a reasonable person the belief that he is in immediate danger of losing his life or suffering great bodily harm. State v. Brown, 522 So.2d 1110 (La.App. 1st Cir. 1988), writ denied, 548 So.2d 1222 (La. 1989). In State v. Lee, 331 So.2d 455 (La. 1975), the Louisiana Supreme Court held that, once an overt act is established, evidence of the victim's dangerous character or his threats against the accused is admissible in support of a plea of self-defense for two distinct purposes: (1) to show defendant's reasonable apprehension of danger which would justify his conduct, and (2) to help determine who was the aggressor in the conflict.
An overt act, as encompassed in LSA-R.S. 15:482 (repealed), is a hostile demonstration of such character as to create in the mind of a reasonable person the belief that he is in immediate danger of losing his life or of suffering great bodily harm. State v. Williams, 410 So.2d 217 (La.1982). The test to be met is whether there was "appreciable evidence of an overt act or hostile demonstration." State v. Lee, supra.
Assuming for purposes of argument that Tarver's actions prior to defendant's firing of the shotgun qualified as overt acts as contemplated by LSA-R.S. 15:482 (repealed), we, nevertheless, find no error in the trial court's ruling on the inadmissibility of the line of questioning attempted. The evidence shows that at the time of this shooting defendant assumed the position of aggressor when he wrested control of the shotgun from Tarver and failed to cease aggressive action. William Miller, a Calcasieu Parish Sheriff's Officer, testified without objection that defendant told him at the Sheriff's Office, just after the shooting, that after defendant jerked the gun from the victim, he pointed it at the victim, saying, "I hope it's not loaded", and pulled the trigger. Thus at the time of the shooting, defendant was not in immediate danger of losing his life or of suffering great bodily harm. Therefore, pursuant to LSA-R.S. 14:21 self-defense was not available to him, and the provisions of LSA-R.S. 15:482 (repealed) were inapplicable. For these reasons, we find that State v. Lee, supra, and its progeny of cases are inapplicable to the case sub judice.
Therefore, this assignment of error is without merit.

STATE'S DISCOVERY VIOLATION
Defendant next contends that the trial court erred in failing to grant a mistrial during the testimony of Deputy Tommy Hebert when he was allowed to testify about evidence that was properly discoverable, but was not disclosed to the defense. In particular, defendant contends that the trial court erred in permitting Deputy Hebert to testify that he overheard defendant tell others that "he didn't know why he did it."
A reversal based on the violation of the discovery articles will not be granted absent a showing of prejudice by defendant. State v. Hooks, 421 So.2d 880 (La. 1982). If defendant is lulled into misapprehension of the strength of the State's case as a result of the State's discovery answers *728 and is prejudiced thereby, a reversal is warranted. State v. Statum, 390 So.2d 886 (La.1980), cert. denied, 450 U.S. 969, 101 S.Ct. 1489, 67 L.Ed.2d 619 (1981).
Notwithstanding, the State's failure to comply with the discovery procedures will not automatically demand a reversal. Rather, the appellate court will examine the circumstances of the case and the trial court's response to see if defendant was prejudiced. State v. Statum, supra.
All that is required for notice under LSA-C.Cr.P. Art. 716(C) is the substance of the statement made. Substance is defined as "the essential element" or "essence" of a thing. State v. Hooks, supra.
In his pre-trial motion for a bill of particulars and discovery, defendant asked the State to inform him of any oral statements made by defendant, as well as to state the full substance, matter and contents of those oral statements. In pertinent part, the State responded:
"On November 19, 1986, at the Calcasieu Parish Sheriff's Office, defendant made statements to Calcasieu Parish Sheriff's Office Deputy Hebert in the presence of Calcasieu Parish Sheriff's Office Deputy Young. Defendant told Hebert that he `didn't mean to do it and he didn't know the gun was loaded'. Defendant refused to sign a rights form and advised the deputies that he wished to speak with his attorney. After speaking with his attorney, defendant was seated in an office alone with deputies stationed near the exit. Defendant then stated `I didn't mean to do it. Well, he won't fuck with me no more'. After being placed under arrest by Deputy Kelland on November 19, 1986, at the Calcasieu Parish Sheriff's Office, defendant stated `I didn't mean to do it'."
The trial court concluded that the statement Hebert gave at trial and that communicated to the defendant in the discovery motion implied the same thing. We agree. The substance of defendant's statements were made known to defendant as required by LSA-C.Cr.P. Art. 716, and the trial court properly denied the motion for mistrial.
This assignment of error is without merit.

OTHER CRIMES EVIDENCE
Defendant next contends that the trial court erred in allowing the State to refer to another crime defendant allegedly committed, namely, possession of marijuana, although no Prieur notice was given.
Errors not embodied in the formal assignments of error and appearing for the first time in defendant's brief are not properly before an appellate court. State v. Spears, 350 So.2d 603 (La.1977). This error is first raised in defendant's brief and will not be considered by this court.

VIOLATION OF SEQUESTRATION ORDER
Defendant contends that the trial court erred in allowing Huey Pete, a State witness, to testify despite proof that he had violated the trial court's rule of sequestration.
During the trial, the State brought to the trial court's attention that Pete had violated the trial court's sequestration order by attending a portion of voir dire examination, as well as listening to part of the testimony of Deputy Sam Opferkuch, a State witness.
When requested, the trial court must grant the sequestration order, subject only to its power to modify the order in the interest of justice. LSA-C.Cr.P. Art. 764 (effective at the time of the trial in the present case; now governed by LSA-C.E. Art. 615); In re Giangrosso, 395 So.2d 709 (La.1981).
The purpose of the rule of sequestration is to prevent prior testimony from influencing witnesses and to strengthen the role of cross-examination in developing the facts. State v. Johnson, 438 So.2d 1091 (La.1983).
It is within the trial court's sound discretion to disqualify a witness if the rule of sequestration is violated. State v. Wilson, 520 So.2d 935 (La.App. 3rd Cir. *729 1987). Nevertheless, a witness who has violated a sequestration order may still be allowed to testify if the purpose of the sequestration order has not been tainted or there is no evidence that the testimony of the witness has been tainted. State v. Hereford, 518 So.2d 515 (La.App. 3rd Cir. 1987). Where there has been no showing that violation of the sequestration order has tainted a witness' testimony, failure of the trial court to preclude the witness from testifying is not erroneous. State v. White, 508 So.2d 982 (La.App. 3rd Cir. 1987). writ denied, 512 So.2d 1184 (La. 1987).
In the case sub judice, the State learned that its witness, Huey Pete, had violated the trial court's sequestration order, and requested a sequestration hearing to determine whether the witness should be prohibited from testifying. At the sequestration hearing, Pete testified that he remained in the courtroom during a portion of the voir dire examination and also during a one hour portion of the testimony of Deputy Sam Opferkuch.
Deputy Opferkuch was a crime scene technician and testified concerning his role in securing the truck in which the victim was shot. The State offered Pete as an eyewitness to the shooting. Pete testified that the only evidence which he heard during Deputy Opferkuch's testimony was testimony about the steps taken to secure the pickup truck after the shooting.
In permitting Pete to testify, the trial court found that the witness had violated the rule of sequestration, but the testimony he heard did not affect his own testimony.
After fully examining the record of this proceeding and the trial court's oral reasons for ruling, we find no error in the trial court's resolution of this matter. In the absence of any showing that the defendant suffered material prejudice as a result of Pete's presence during voir dire examination, or that his exposure to Deputy Opferkuch's testimony was sufficient to affect his own testimony or to undermine the defendant's ability to cross-examine the witness, we find that the trial court properly allowed Pete to testify.
This assignment of error lacks merit.

EXPERT TESTIMONY
Defendant contends that the trial court erred in allowing Dr. Stanley Smith, Dr. Steven Kessler, Dr. Ralph Colpitts, and Tom Harless, four expert State witnesses, to testify as experts outside of their fields of expertise.
An irregularity or error cannot be availed of after verdict unless it was objected to at the time of the occurrence. LSA-C.Cr.P. Art. 841. The party aggrieved should, at the time the ruling is made, make known to the trial court his objections and the grounds therefor. This allows the trial court to rule on the objection and the grounds will be preserved for appeal. LSA-C.Cr.P. Art. 844; State v. Arvie, supra.
In the case sub judice, we have carefully reviewed the testimony of Dr. Stanley Smith, Dr. Steven Kessler, and Dr. Ralph Colpitts, and find that the defendant failed to enter a contemporaneous objection based on the contentions raised in this appeal. Therefore, we find that these assignments of error are not properly before us.
We next address defendant's contention that Tom Harless, an expert in the field of firearm identification, was allowed to render an opinion, outside his field of expertise, on the distance the weapon was from the victim when defendant pulled the trigger.
We have carefully examined Harless' testimony, and find that, although he testified to the spray patterns of shotgun pellets at various distances from a target, his ultimate conclusion, elicited most forcefully on cross-examination by defense counsel, was that he could not render an opinion in the case sub judice as to the distance the weapon was fired from the victim. Accordingly, we find that there is no factual basis for defendant's contention on appeal. Therefore, this assignment lacks merit.

*730 DEFENDANT'S SILENCE AFTER MIRANDA WARNINGS
Defendant contends that the trial court erred when it allowed the State's witness, Deputy Larry Keeland, the arresting officer, to remark that defendant did not make a statement after he was advised of his Miranda rights. This error was not made a formal assignment of error, and is argued for the first time in defendant's brief.
Allegations of error not embodied in the formal assignments of error and appearing for the first time in defendant's brief are not properly before an appellate court. State v. Spears, supra.
For this reason, this allegation is not properly before us for consideration.

SENTENCING HEARING
Defendant contends that the trial court erred in sentencing him without first giving him an opportunity to present evidence or even address the court.
Pre-sentence hearings are not required by the Louisiana Code of Criminal Procedure, State v. Brown, 440 So.2d 994 (La.App. 3rd Cir.1983), writ denied, 444 So.2d 120 (La.1984), but the jurisprudence has held that the due process guarantee of La. Const. art. I, Section 2 requires that a defendant be given an opportunity to rebut false or invalid data of substantial nature, to which the sentencing judge is exposed, where there is a reasonable probability that it may have contributed to the harshness of the sentence. State v. Bosworth, 360 So.2d 173 (La.1978). The defendant must be given an opportunity to rebut or explain misinformation on which the trial court relied or to which it is exposed in making its sentencing decision. State v. Cox, 369 So.2d 118 (La.1979).
In the case sub judice, the record reflects that at no time prior to the imposition of sentence did defendant request to address the trial court. In light of defendant's failure to request the opportunity to address the court, we find that he has waived an objection to the procedure utilized by the sentencing court. Moreover, in light of the jurisprudence outlined hereinabove, we also find that defendant was provided with the pre-sentence investigation report prior to sentencing, and made no assertions either in the trial court or on appeal that there are inaccuracies or falsities contained therein which he was not allowed to correct.

EXCESSIVENESS OF SENTENCE
Defendant contends that the trial court erred in sentencing him to the maximum sentence, 21 years at hard labor, together with the maximum enhancement under LSA-C.Cr.P. Art. 893.1 which provides that the first 5 years be served without benefit of parole, probation, or suspension of sentence.
The jurisprudence of Louisiana is well settled on the question of excessiveness of sentence and will not be repeated herein. See State v. Everett, 530 So.2d 615 (La. App. 3rd Cir.1988), writ denied, 536 So.2d 1233 (La.1989), and cases cited therein.
The maximum period of imprisonment for the crime of manslaughter is confinement at hard labor for no more than 21 years. LSA-R.S. 14:31. Furthermore, because a firearm was used in this case, the trial court required that the first five years of defendant's sentence be served without benefit of parole, probation, or suspension of sentence. Since defendant's sentence falls within the statutory guidelines, the question on appeal then becomes whether defendant's sentence is excessive.
In the case sub judice, the record reflects that the sentencing court considered the pre-sentence investigation report, defendant's personal history, defendant's past criminal history and the seriousness of the offense committed. In particular, the sentencing court noted: (1) defendant became the aggressor when he approached the victim some ten to fifteen minutes after the initial confrontation, knowing that the victim possessed a weapon; (2) defendant has a record of aggressive behavior; (3) the evidence indicated that defendant actively sought a physical confrontation with the victim at the time the manslaughter occurred; (4) defendant presents an undue *731 risk to society, and that commitment to a correctional facility was the best way to provide defendant with correctional treatment; and (5) any lesser sentence would deprecate the seriousness of defendant's crime which was gruesome, grotesque, and of a permanent and everlasting nature.
Considering the brutality of the victim's death, defendant's repeated refusal to walk away from the confrontation, even after he had wrested control of the shotgun from the victim, and defendant's record of aggressive behavior extending throughout his days as a juvenile, we cannot say that the penalty imposed shocks our sense of justice. Accordingly, we are unable to say that the sentence imposed is excessive.
Therefore, this assignment of error lacks merit.

BRADY MATERIAL: GRAND JURY TESTIMONY
Lastly, defendant contends that the State violated defendant's rights when it failed to disclose Brady material. In particular, he argues that the sworn testimony of several State witnesses was inconsistent with their grand jury testimony.
Allegations of error not embodied in the formal assignments of error, and appearing for the first time in defendant's brief are not properly presented for appellate review. State v. Spears, supra. In the case sub judice, this alleged error is first raised in defendant's brief.
Accordingly, we find that this error is not properly before us for consideration.

DECREE
For the foregoing reasons, defendant's conviction and sentence are affirmed.
AFFIRMED.