596 So.2d 315 (1992)
STATE of Louisiana, Plaintiff-Appellee,
v.
Sun Cha PARKER, Defendant-Appellant.
No. Cr91-637.
Court of Appeal of Louisiana, Third Circuit.
March 11, 1992.
*317 Thomas Lorenzi, Lorenzi & Sanchez, Lake Charles, for defendant-appellant.
Patricia Minaldi, Paul Reggie, Asst. Dist. Attys., Lake Charles, for plaintiff-appellee.
Before DOMENGEAUX, C.J., and STOKER and YELVERTON, JJ.
YELVERTON, Judge.
The defendant, Sun Cha Parker, was convicted by a jury of seven counts of promoting prostitution, La.R.S. 14:83.2, and six counts of pandering, La.R.S. 14:84. She was sentenced to serve consecutive six month terms of imprisonment at hard labor on each of the seven counts of promoting prostitution, and like consecutive terms of six months imprisonment on each of the six counts of pandering. The pandering sentences were made to run concurrently with the associated sentences for promoting prostitution. The total was three and one-half years.
Her appeal raises eleven assignments of error. No. 7 was abandoned. Uniform RulesCourts of Appeal, Rule 2-12.4. Eight of the remaining assignments deal with the conviction. No. 11 has to do with the sentence.

FACTS
Sun Cha Parker owned and managed Tokyo Spa (or Tokyo House) in Lake Charles. She had a commercial checking account in a local bank for Tokyo House. She filed federal income tax returns as owner of that business. The business showed a profit in 1989 of $8,271. On seven different dates in 1989 massages were performed at Tokyo Spa, and the male customers who related these events at trial testified that the massages included fondling of their genitals. The customers were charged a fee for this service. The seven events formed the basis for all counts in the bill of information.
There was also evidence that this defendant pled guilty to prostitution by massage for activity which occurred at Tokyo Spa at the same location on December 3, 1987. Poksun Thibodeaux, an employee of Tokyo Spa, also pled guilty to prostitution by massage. Another employee, To Son Rymer, pled guilty to prostitution by massage and soliciting for prostitution on September 11, 1989.

ASSIGNMENTS OF ERROR NOS. 1 AND 2
By these assignments of error the defendant contends that the trial court erred in permitting the state to introduce evidence of the defendant's prior conviction for prostitution by massage in 1987 and evidence of the prior convictions of her employees, To Sun Rymer and Poksun Thibodeaux. The defendant claims that the admission of her prior conviction was a violation of La.C.E. Arts. 403, 404 B and 1103, as well as a violation of her constitutional guarantees to a fair trial and due process of law. In reference to the prior convictions of Rymer and Thibodeaux, the defendant claims that the admission of these into evidence was a violation of La.C.E. Arts. 402, 403, and her constitutional guarantees to a fair trial and to due process of law.
The admissibility of evidence of other crimes committed by the defendant is treated under Louisiana Code of Evidence, Article 404 B(1), which states:
B. Other crimes, wrongs, or acts. (1) Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, *318 absence of mistake or accident, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
The particular exception asserted by the state is that the evidence of the defendant's other crimes was properly admissible to show her intent and/or knowledge in the instant case. Specifically, the state reasoned that the evidence was necessary to show that the defendant knowingly and intentionally managed, supervised or maintained a place of business where prostitution was habitually practiced. Such a showing is necessary to prove the charged crimes of promoting prostitution and pandering, violations of La.R.S. 14:83.2 and La.R.S. 14:84, respectively.
The defendant's prior conviction was a result of investigations into illegal sexual activities occurring at the "Tokyo Spa" or "Tokyo House," a business which ostensibly operated as a massage parlor in Lake Charles, Louisiana, in December of 1987. Based on charges that prostitution was occurring at the Tokyo Spa and that the defendant was managing the business, the defendant was arrested for promoting prostitution. She ultimately pled guilty to prostitution by massage, La.R.S. 14:83.3.
The evidence was properly admitted. It had relevance for a purpose independent of portraying the defendant as a person of bad character. The evidence tended to prove that the defendant had knowing and willful control of an enterprise in which customers were charged a fee for services which include prostitution, a necessary element of promoting prostitution under La.R.S. 14:83.2. The evidence also tended to prove that the defendant was maintaining a place where prostitution was habitually practiced, a necessary element of pandering under La.R.S. 14:84(2). When relevant evidence is necessary to establish the elements of a crime, it is not rendered inadmissible merely because it involves the commission of another crime. State v. Dupre, 369 So.2d 1303 (La.1979); State v. Anderson, 343 So.2d 135 (La.1976).
The probative value of the evidence outweighed its prejudicial effect. The trial judge so found, and we find no manifest error in this ruling.
As to the evidence of other crimes committed by Tokyo Spa employees, To Sun Rymer and Poksun Thibodeaux, admissibility needs to pass only the tests of La.C.E. Art. 402 and 403; that is, the evidence must be deemed relevant and its probative value must not be substantially outweighed by the danger of unfair prejudice.
Evidence is deemed to be relevant when it has any tendency to make the existence of any fact that is of consequence to the determination of an action more probable or less probable than it would be without the evidence. La.C.E. Art. 401. The prior conviction records of Rymer and Thibodeaux satisfy this requirement. Poksun Thibodeaux was arrested and charged with prostitution by massage at the Tokyo Spa on December 3, 1987 the same date on which the defendant was previously arrested. To Sun Rymer was arrested and charged with prostitution by massage at the Tokyo Spa on the date that the defendant was arrested for the instant charges. This evidence is clearly relevant because it tends to show the defendant's knowing control and maintenance of a business where prostitution was habitually practiced. The trial judge's admission of this evidence was not an abuse of discretion.
The defendant's first two assignments of error are without merit.

ASSIGNMENT OF ERROR NO. 3
The defendant claims that the trial court erred by permitting the state to produce evidence of other crimes which occurred on December 14, 1989, through the testimony of an informant. It is argued that the evidence was introduced through the informant's testimony without the required Prieur notice and that the probative value of the evidence was outweighed by its prejudicial effect especially in light of the fact that the crimes referred to where not charged.
*319 The evidence in question was introduced through the testimony of Raul Garza, an informant who regularly worked undercover for the Calcasieu Parish Sheriff's Office. Garza testified that he went to the Tokyo Spa on the night of December 14, 1989, without the knowledge of the sheriff's office and completely on his own volition. After entering the premises, Garza rang an upstairs doorbell and was greeted by an Oriental female. At this point Garza asked how much money was required for their "services" and the woman responded, "$80". Garza informed the woman that he did not then have the money but that he was getting paid the next day and might return. Garza testified that at this point, "[S]he came up real close to me and she said, why don't you do that, and at the same time rubbing my crotch area and encouraging me to go over the next night." The following day Garza informed a member of the sheriff's office about his experience at the Tokyo Spa and the undercover operation which resulted in the arrest of the defendant was set in motion.
As authority for the admission of this testimony without the necessity of Prieur notice, the state cited State v. Gordon, 336 So.2d 793 (La.1976). The trial court overruled the defendant's objection to the introduction of Garza's testimony and ruled that Gordon was directly applicable.
A review of the Gordon case reveals that it is directly on point. In that pandering case, the supreme court held that the trial court did not err in permitting testimony of sexual acts on days other than that charged in the bill of information. The court reasoned that since the habitual nature of prostitution is an essential element of the crime of pandering, testimony relating to sexual acts performed at the defendant's massage parlor on dates other than the one charged in the bill of information was admissible as part of the crime charge. The supreme court further held that no Prieur notice was required in these circumstances. Id. at p. 794.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NOS. 5 AND 6
By these assignments of error, the defendant contends that the trial court erred by permitting Wayne Jusselin to offer prejudicial testimony of racial and cultural evidence of guilt, other crimes evidence, and opinions on the ultimate issue, and in denying the defendant's motion for mistrial due to the introduction of this evidence.
Sergeant Wayne Jusselin was a police officer employed by the City of New Orleans. He was tendered and accepted as an expert in the field of the investigation of prostitution and undercover operations involving prostitution.
Sergeant Jusselin gave testimony in which he translated many of the slang terms used in the prostitution business. The defendant objected to the sergeant's subsequent testimony which proceeded as follows:
Q: All right. In your investigation, prior investigations of massage parlors, has it ever occurred that some individuals, customers, receive different treatment than other customers?
A: Yes, it has, on almost all occasions.
Q: All right. Can you explain why that would happen?
A: ItIt goes by race. They believe that they're fairly safe with Orientals, they're fairly safe with Blacks. They have an easier time doing sexual favors, as you would say, with those people other than white males because there's more white males in the police department.
The defendant objected to the testimony cited above based on the provisions of La. C.E. Art. 403. The statute provides that evidence, although relevant, may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice.
The question of relevancy and admissibility under Art. 403 is a determination which is vested in the trial judge. The trial judge's ruling is entitled to great discretion and should not be disturbed absent clear abuse. State v. Caldwell, 504 So.2d 853 (La.1987); State v. Bland, 558 So.2d 719 *320 (La.App. 3rd Cir.1990), writ denied, 565 So.2d 440 (La.1990).
In the instant case there is no evidence of abuse on the part of the trial judge in admitting the quoted testimony of Sergeant Jusselin. The statements made by Sergeant Jusselin were not racially motivated, but were merely observations from his police experience. Also, these statements were within the realm of his expertise.
The defendant's next contention in relation to Sergeant Jusselin's testimony is that a motion for mistrial should have been granted because the witness invaded the ultimate issue of guilt or innocence by referring to statements made by the defendant and the prior convictions of Rymer. The particular testimony referred to proceeded as follows:
Q: Have you had the opportunity to review some of the evidence that has been presented in this case?
A: I have.
Q: Have you in particular been apprised by me of certain oral statements that were made by the defendant that have been introduced into evidence.
A: I have.
Q: Have you been apprised of the oral statement made by the defendant that she didn't know the whereabouts of two of the individuals that were involved in this investigation because she trains them for three weeks and then sends them to an unknown location?
A: Yes, I am aware of that.
Q: And have you also had the opportunity to review what has previously been marked as state's exhibit 31 and state's exhibit 21?
A: Yes, I have.
Q: Are you familiar with what those two documents are?
A: Yes, they are pleas of guilty, certified copies of pleas of guilty in Calcasieu Parish for Ms. Rymer.
Q: And are you aware that the two dates upon whichfor which Ms. Rymer has pleaded guilty are two of the dates which are involved in this case wherein prostitution was alleged to have occurred?
A: Yes, ma'am.
At this point the testimony was halted and a bench conference was called. The prosecutor was asked the purpose of her line of inquiry. When she answered at the bench that she was attempting to establish a system whereby women would travel from massage parlor to massage parlor and upon their conviction move on, the trial judge refused to permit a continuation into this area. The judge found that a continuation would be asking the witness to comment on the guilt or innocence of the defendant before the court. At this point defense counsel chose to exercise his right to move for a mistrial. The trial judge ruled that the ultimate issue was not yet invaded sufficiently to grant a mistrial.
La.C.E. Art. 704 govern the issue of testimony offering an opinion on the ultimate issue. The article provides:
Testimony in the form of an opinion or inference otherwise admissible is not to be excluded solely because it embraces an ultimate issue to be decided by the trier of fact. However, in a criminal case, an expert witness shall not express an opinion as to the guilt or innocence of the accused.
Thus, an expert opinion is not inadmissible because it embraces an ultimate issue to be decided by the fact finder, except that an expert cannot express an opinion as to the guilt or innocence of the accused.
In the present case Sergeant Jusselin did not express an opinion as to the defendant's guilt or innocence. The sergeant merely acknowledged that he had read certain testimony. When the prosecution made an apparent effort to tie this testimony into the elements required for the offenses charged, the line of questioning was terminated. Thus, the witness fell well short of commenting on the defendant's guilt or innocence, and the record does not support a contention that guilt was inferred from the witness' testimony.
The defendant's assignments of error numbers five and six are without merit.

*321 ASSIGNMENT OF ERROR NO. 4
The defendant urges that the trial court committed reversible error by granting qualification to Wayne Jusselin as an expert in prostitution. The defendant claims this was a violation of La.C.E. Art. 702 as well as her constitutional guarantees to a fair trial and due process of law.
La.C.E. Art. 702 provides for the testimony of experts. It states:
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
The competence of an expert is a question of fact within the sound discretion of the trial judge and his rulings on the qualification of an expert witness will not be overturned absent manifest error. State v. Hodges, 526 So.2d 1275 (La.App. 3rd Cir. 1988), writ denied, 532 So.2d 174 (La.1988); State v. Watson, 449 So.2d 1321 (La.1984), cert. denied, 469 U.S. 1181, 105 S.Ct. 939, 83 L.Ed.2d 952 (1985).
The defendant claims that the trial court committed manifest error by qualifying Sergeant Jusselin as an expert due to the state's failure to present the content of the sergeant's testimony prior to qualification. The defendant cites no authority supporting such a prerequisite to the tender of an expert.
The state established the competence of Sergeant Jusselin as an expert in pandering and the promotion of prostitution. In the case of State v. McCray, 327 So.2d 408 (La.1975), Louisiana's Supreme Court found that an adequate foundation had been laid for the qualification of a police officer as an expert in the field of pandering when the officer testified that he was assigned to the vice squad for six years, had participated in "a couple of hundred" cases dealing with pandering, had been qualified as an expert on the subject in several courts previously, had successfully completed a course in vice at the police academy, and was currently an instructor on that subject.
The record indicates that Sergeant Jusselin's qualifications virtually mirror those set forth in McCray, supra. For approximately 18 years Sergeant Jusselin worked vice crime, including prostitution, in New Orleans. During this time he investigated over 50 massage parlors involving over 15,000 prostitution investigations. In addition to his on-the-job experience, the sergeant received special training at the FBI Academy at Quantico, Virginia, and other schools. The sergeant was previously qualified as an expert in prostitution investigation in several courts in New Orleans, East Baton Rouge Parish and Plaquemines Parish. Finally, Sergeant Jusselin has served as an instructor in classes involving prostitution and vice investigations.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 8
By this assignment of error the defendant contends that the trial court erred by denying challenges for cause as to two potential jurors. We have examined the voir dire as to each challenge, and we find that the trial court's refusal to exclude the juror was not an abuse of discretion.

ASSIGNMENTS OF ERROR NOS. 9 & 10
By these assignments defendant contends the trial court erred by denying her Motion for Post Verdict Judgment of Acquittal to counts 5, 6, 9, 10, and 14, and in finding that guilt was proved beyond a reasonable doubt as to counts one through 12, and 14. These arguments essentially allege an insufficiency of the evidence, under the familiar Jackson v. Virginia standard.
The defendant disputes only one element of the crimes charged in the counts enumerated abovethe occurrence of acts of prostitution on the dates involved.
Sufficient evidence was presented by the state to prove that the defendant knowingly and willfully controlled, supervised, managed and maintained the Tokyo Spa. The testimony also established that the defendant received support from the *322 profits made by the Tokyo Spa. The evidence supported the occurrence of acts of prostitution at the Tokyo Spa in years prior to the instant charges. On December 3, 1987, the defendant was arrested at the Tokyo Spa and charged with promoting prostitution. She pled guilty to prostitution by massage. At this time she admitted to being the owner of the business. On the same date, Poksun Thibodeaux was arrested at the Tokyo Spa and also pled guilty to prostitution by massage. Another employee of the Tokyo Spa, To Son Rymer, pled guilty to prostitution by massage and soliciting prostitution on September 11, 1989. There was a barrage of evidence proving that acts of prostitution were habitually practiced at the Tokyo Spa, and specifically on the dates alleged in the bill of information.
The particularly disputed dates were March 20, May 18, and December 15, 1989. The first disputed date, March 20, 1989, concerns counts five and six, and Deputy Royal Fontenot was the witness. He testified that he paid Tokyo Spa $60 and during the massage the masseuse passed her hand over his genital area. One form of prostitution condemned by our Criminal Code is prostitution by massage. La.R.S. 14:83.3. The evidence was sufficient to convict regarding the incident of March 20, 1989.
The next date disputed by the defendant was May 18, 1989, and relate to counts nine and ten. For these counts the state relied on the testimony of Robert Alleman. He testified that he went to the Tokyo Spa on that date for a massage and expected "some sexual connection with it." An Oriental woman greeted him. He requested a massage and tendered the required payment. Alleman testified that during his massage she touched his genitals "accidently, on purpose," and he became erect. He caressed the masseuse's buttocks.
The final count disputed by the defendant on sufficiency of the evidence grounds is count 14, promoting prostitution, on December 15, 1989. The evidence offered by the state in support of this charge was the testimony of Raul Garza. On December 15, Garza went to the Tokyo Spa where he was greeted by an Oriental woman who he identified as the defendant. He was escorted to a room where he turned over $80. Garza was asked to remove his clothes and he was escorted to a sauna room. After the sauna, Garza testified that the defendant showered him which included washing his genitals. A massage was performed next, and Garza testified that during this massage the defendant "played with" his genitals. Finally, Garza testified that the defendant performed oral sex before his allotted time expired.
These assignments of error have no merit.

ASSIGNMENT OF ERROR NO. 11
By this assignment of error the defendant contends that the sentence imposed by the trial court aggregating three and one-half years were excessive.
The defendant was convicted on seven counts of promoting prostitution in violation of La.R.S. 14:83.2, and six counts of pandering in violation of La.R.S. 14:84. The crime of promoting prostitution carries a maximum fine of $5,000 and a maximum imprisonment of two years with or without hard labor. The crime of pandering carries a maximum fine of $5,000 and a maximum imprisonment of five years with or without hard labor.
The defendant was sentenced to serve six months at hard labor on each of her seven promoting prostitution counts, to run consecutively. Additionally, the defendant was sentenced to six months at hard labor on each of her six pandering counts, to run concurrently with the associated promoting prostitution count. Thus, the defendant's entire sentence amounted to a three and one-half year term of imprisonment at hard labor. Clearly, this sentence is well within the permissible statutory limits.
The instant offenses occurred while the defendant was on probation for the previous conviction. The trial judge also took cognizance of the fact that a sentence of one year or more could result in the deportation of the defendant.
*323 The trial judge concluded that the aggravating factors in the instant case ruled out probation. These factors included the defendant's multiple arrests for the same criminal conduct; her prior conviction for a similar crime; one occasion when she, in essence, fled the jurisdiction and had to be extradited; and the seriousness of the offenses. The judge found that the defendant's refusal to be rehabilitated outweighed the fact that she could be deported for a sentence of greater than one year of imprisonment. The trial judge listened to the defendant as well as her attorney, at the sentencing hearing, and carefully considered a number of sentencing factors. The court decided to impose the three and one-half year sentence at hard labor. The trial judge complied with the mandates of La.C.Cr.P. Art. 894.1. After viewing the record, the circumstances of the offense and the considerations elucidated by the trial judge, we find that the sentences imposed were not excessive.
The convictions and sentences are affirmed.
AFFIRMED.