STATE OF LOUISIANA
v.
ROBERT A. CARAMANICA, A/K/A "SONNY" CARAMANICA
No. 08-1056.
Court of Appeals of Louisiana, Third Circuit.
April 1, 2009.
JOHN F. DeROSIER, District Attorney, DAVID L. KIMBALL, Assistant District Attorney, CARLA S. SIGLER, Assistant District Attorney, Counsel for Appellee: State of Louisiana.
PAULA C. MARX, Louisiana Appellate Project, Counsel for Defendant-Appellant: Robert A. Caramanica.
Court composed of COOKS, J. PAINTER, and GREMILLION, Judges.
COOKS, Judge.

FACTS AND PROCEDURAL HISTORY
Back in 1987, Defendant, Robert A. Caramanica, a/k/a Sonny Caramanica, and the victim, Gerald Murray, a native of Ohio, worked together in the carnival business in an area around Houston, Texas. On March 28, 1987, the victim's lifeless body was discovered near the Browning Ferris Industries (BFI) plant in Sulphur, Louisiana. The victim had been stabbed to death and his body was wrapped in a bedspread. The victim had no form of identification on his person. To identify the victim, his fingerprints were taken and his jaw bone was removed in the event it was needed for comparison to dental records. The fingerprints were sent to the FBI lab and, approximately a month later, the fingerprints were matched to the victim.
The victim's father reported he last spoke to the victim on March 27, 1987. Other witnesses to whom investigators spoke indicated they had seen the victim with Defendant late that same evening and the victim drove a Mercury Monarch. The witnesses also indicated the victim and Defendant left together in the victim's vehicle.
On April 27, 1987, investigators contacted Defendant by phone and learned he was in Milton, Florida, at the home of Betty Pound. Defendant acknowledged he had been with the victim on March 27, 1987. Defendant indicated he would come to Lake Charles to speak to investigators on April 29, 1987, but never showed up.
In June of 1987, Ms. Pound was interviewed by investigators at her home in Milton, Florida. Ms. Pound reported Defendant arrived at her home on March 29, 1987, driving a blue Mercury Monarch. Defendant told Ms. Pound he had purchased the car from a friend. He later removed the license plate from the car, telling Ms. Pound he did not have insurance on the vehicle. According to Ms. Pound, Defendant left her home soon after an investigator called on April 27, 1987, leaving the vehicle behind, and never returning. The VIN number on the car confirmed it was the vehicle belonging to the victim. During the search of the vehicle, a substance believed to be blood was found in the trunk.
A warrant was issued for Defendant's arrest and he was arrested in Gainesville, Florida, on May 28, 1988, and returned to Calcasieu Parish. Defendant voluntarily gave a recorded statement. In his statement, Defendant indicated he and the victim went to a lounge in Lake Charles, and the victim departed from the lounge, leaving his vehicle with Defendant. When the victim did not return, Defendant drove the vehicle to Ms. Pounds' home, arriving on March 28, 1987.
Over the next month, hair and blood samples were taken from Defendant for comparison to the samples found on the sheet and blanket found with the victim and in the victim's trunk. The blood found on the bedspread was determined to be "O" type blood, whereas Defendant's blood was determined be "A" type blood. Defendant was scheduled to appear before a grand jury, but refused to testify and was released from custody.
About fifteen years later, in April, 2002, the Cold Case Homicide Unit of the Calcasieu Parish Sheriff's Office began a review of the victim's unsolved homicide. The victim's jaw bone with teeth was sent to the crime lab on April 12, 2002. Also, a section of carpet pad from the victim's trunk, along with a black rubber seal from the truck opening, were sent to the crime lab on May 31, 2002. In October of 2002, the North Louisiana Crime Lab obtained a complete male nuclear DNA (nucDNA) profile from the truck liner.[1] In February of 2003, however, the lab was unable to obtain a nucDNA profile from the jawbone which investigators believed would match the blood found in the trunk.
In October of 2003, a nucDNA profile was obtained from the bedspread and was consistent with the profile obtained from the trunk liner. The profile was then compared to the nucDNA profile obtained from the victim's father which established a parent/child kinship.
Meanwhile, the investigation continued and Defendant was eventually arrested, and indicted by a grand jury on September 16, 2004 with the second degree murder of Gerald Murray in March of1987, a violation of La.R.S. 14:30.1. He was arraigned on November 29, 2004. Additionally, in August, 2005, the crime lab requested an opportunity to re-examine the victim's jawbone because a new and more efficient method of tissue extraction had been developed. A partial DNA profile was obtained from the bone powder and was found to be consistent with the DNA profile obtained from the trunk liner and the bedspread. As such, the blood found in the trunk was positively identified as that of the victim.
A trial by jury began on November 13, 2007. After the trial resumed on November 16, 2007, Defendant entered a plea of no contest to the reduced charge of manslaughter. Defendant was sentenced on February 22, 2008, to twenty-one years at hard labor, with credit for time served from the date of his arrest. A Motion to Reconsider Sentence was filed and denied. Defendant is now before this court on appeal, asserting his sentence is excessive and his right to a fair trial was affected when the trial court allowed other crimes, wrongs or acts and extraneous and prejudicial remarks by a law enforcement officer to be introduced at trial. For the reasons that follow, we affirm Defendant's sentence.

ASSIGNMENTS OF ERROR NOS. 1 and 2
By these assignments of error, Defendant argues his sentence is excessive and the trial court did not particularize the sentence and comply with La.Code Crim.P. art. 894.1. This court has set forth the following standard to be used in reviewing excessive sentence claims:
La.Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. State v. Campbell, 404 So.2d 1205 (La.1981). The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. State v. Etienne, 99-192 [p.5] (La.App. 3 Cir. 10/13/99); 746 So.2d 124, writ denied, 00-0165 (La.6/30/00); 765 So.2d 1067. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. State v. Cook, 95-2784 [p. 3] (La.5/31/96); 674 So.2d 957, cert. denied, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).
State v. Barling, 00-1241, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042-43, writ denied, 01-838 (La. 2/1/02), 808 So.2d 331.
To decide whether a sentence shocks the sense of justice or makes no meaningful contribution to acceptable penal goals, we have held:
[An] appellate court may consider several factors including the nature of the offense, the circumstances of the offender, the legislative purpose behind the punishment and a comparison of the sentences imposed for similar crimes. State v. Smith, 99-0606 (La.7/6/00), 766 So.2d 501. While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." State v. Batiste, 594 So.2d 1 (La.App. 1 Cir.1991). Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case." State v. Cook, 95-2784 (La.5/31/96), 674 So.2d 957, 958.
State v. Smith, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, writ denied, 03-562 (La. 5/30/03), 845 So.2d 1061.
At the time the crime was committed, March of 1987, the maximum sentence for manslaughter was twenty-one years at hard labor. Thus, Defendant received the maximum possible sentence. However, Defendant faced a possible life sentence for the original charge of second degree murder. As such, Defendant derived a significant benefit from his plea agreement which drastically reduced his sentencing exposure.
At sentencing, the victim's sister and father testified as to the devastating impact the victim's death had on their lives, as well as the victim's mother who was deceased at the time of trial. The victim's sister also read aloud a letter written by the victim's son, now thirty years old, which stated he was nine years old at the time of his father's death. The letter also indicated the victim had an eight-year-old son and a seven-year-old daughter at the time of the his death who were all devastated at the loss of their father.
In addition to this testimony and letter, the trial court stated it had considered the information in Defendant's Presentence Investigation Report. The trial court observed that Defendant had numerous felony convictions including armed robbery, larceny, grand larceny and the instant offense. The trial court considered the Defendant to be, at minimum, a third felony offender for the purpose of determining eligibility for a probated sentence, and concluded he was not eligible for same.
In sentencing Defendant, defense counsel asked the trial court to consider Defendant's advanced age, almost sixty-two years old, his history of seizures and his serious health issues. The State urged the trial court to consider that Defendant had not taken any responsibility for his actions and maintained he deserved the maximum sentence. The trial court then imposed the maximum twenty-one-year sentence at hard labor, giving credit for all time served.
On appeal, Defendant asserts the trial court failed to give a sufficient factual basis for the sentence as required by La.Code Crim.P. art. 894.1. Specifically, Defendant complains there is no mention of his personal history, other than his criminal history, most of which he maintains occurred more than twenty years ago. Also, Defendant contends the record fails to affirmatively reflect that adequate consideration was given to the guidelines in particularizing the sentence. The Defendant avers the case was based on circumstantial evidence which he could not refute and which led to his no contest plea. Next, Defendant urges this court to consider he expressed sorrow for the death of the victim and felt grief for the loss of his life, he is almost sixty-two years old, he served in Vietnam, and he suffers from seizures and is blind in one eye.
Maximum sentences, in general, are reserved for the worst type of offender and for the most serious violation of the offense. State v. Brandenburg, 06-1158, p. 28 (La.App. 3 Cir. 2/7/07), 949 So.2d 625, writ denied, 07-538 (La. 10/26/07), 966 So.2d 571 and 07-614 (La. 10/26/07), 966 So.2d 573. The jurisprudence was reviewed for maximum sentences imposed for manslaughter convictions involving similar facts around the time the instant offense was committed.
In State v. Dearborne, 571 So.2d 828 (La.App. 3 Cir. 1990), writ denied, 576 So.2d 29 (La. 1991), the defendant was originally charged with second degree murder, pled guilty to the lesser offense of manslaughter, and was sentenced to the maximum sentence of twenty-one years. On appeal, the court noted that the defendant was a first time offender and a productive member of society. However, based on the facts of the offense, the court found the sentence was not excessive. The defendant deliberately shot his wife at point-blank range through a pillowcase while she was in bed, which formed the original basis for the second-degree murder charge.
In the following cases, the defendants were charged with second degree murder, but were found guilty of manslaughter, sentenced to the maximum sentence of twenty-one years and the sentences were all affirmed on appeal. In State v. Berryhill, 562 So.2d 1105 (La.App. 4 Cir. 1990), the defendant had no prior criminal record. The trial court, however, noted he shot the victim without provocation and for no apparent reason. Also, the trial court considered the fact that the defendant lied on the witness stand when he testified he did not commit the murder.
In State v. Bland, 558 So.2d 719 (La.App. 3 Cir. 1990), writ denied, 565 So.2d 440 (La.1990), the trial court focused on the defendant's aggressive behavior in committing the offense. The facts reflect that the defendant and victim, both eighteen years old, were involved in a physical altercation. The victim, who was armed with a shotgun, was disarmed by the defendant, who in turn pointed the shotgun at the victim's head and fired. The victim died two days later. The trial court also noted the defendant's prior record of aggressive behavior. On appeal, the court considered the brutality of the victim's death, the defendant's repeated refusal to walk away from the confrontation, even after disarming the victim, and the defendant's record of aggressive behavior which spanned throughout his juvenile years.
In State v. Warren, 536 So.2d 529 (La.App. 1 Cir. 1988), the defendant had no prior criminal record. The court, however, determined the egregious nature of the crime supported the maximum sentence. The facts reflect the defendant and the victim engaged in a scuffle, the defendant pulled a gun and the victim fled. The defendant made chase and fired twice, hitting the victim in the leg with the second shot. The defendant then stood over the victim while he was lying on the ground and shot him three to five more times, resulting in his death.
In State v. Hahn, 526 So.2d 260 (La.App. 2 Cir. 1988), writ denied, 532 So.2d 150 (La. 1988), despite the fact he was a first felony offender, the court found that the facts supported the maximum sentence. The defendant shot and killed his estranged wife when she attempted to flee after refusing to leave with him from her workplace.
The facts of the instant case are unusual in that Defendant was convicted almost twenty years after the offense was committed. Also, the trial court was not privy to any specifics of the offense or facts surrounding the offense. The only information known with regard to the offense was that the victim was found stabbed to death and his body dumped near the BFI plant. However, the evidence of the victim's stabbing, alone, involved a brutal act of violence. Added to the fact that the victim's body was discarded like trash, we find the offense was egregious enough to support the maximum sentence.
The trial court did not give a lengthy recitation of the facts which formed the basis for the sentence. However, as noted above, the sentencing judge need not articulate every factor mentioned in 894.1, but the record must show the trial court adequately considered the guidelines.
In the instant case, the record indicates the trial court considered the information in Defendant's Presentence Investigation Report which includes Defendant's personal history as well as his criminal history. The trial court also considered Defendant's age and health problems, in addition to the fact he did not take responsibility for his actions which caused significant loss to the victim's relatives. The fact Defendant is a Vietnam veteran was not presented to the trial court, and thus cannot be considered herein for the first time on appeal. Considering the record clearly reflects an adequate basis for the sentence imposed, we affirm Defendant's sentence.

PRO SE ASSIGNMENTS OF NOS. 1 and 2
By these assignments of error, Defendant argues his right to a fair trial was affected when the trial court allowed other crimes, wrongs or acts and extraneous and prejudicial remarks by a law enforcement officer to be introduced at trial. These alleged errors are non-jurisdictional defects that occurred prior to the entry of the Defendant's no-contest plea. Accordingly, Defendant waived the right to appeal the alleged errors when he entered his no contest plea. See State v. Despanie, 06-1269 (La.App. 3 Cir. 2/7/07), 949 So.2d 1260.

DECREE
For the foregoing reasons, Defendant's sentence is affirmed.
AFFIRMED.
NOTES
[1] Nuclear DNA (nucDNA) is the DNA of the chromosomes found in the nucleus of a cell and contains genes from both parents, allowing a match from either side of the family to be made.